The STATE OF MONTANA, Acting By and Through the STATE HIGHWAY COMMISSION of the State of Montana, Plaintiff and Appellant, v. JOHN B. BARNES and MARGARET M. BARNES, also known as Marguerite M. Barnes, husband and wife as joint tenants; FEDERAL LAND BANK OF SPOKANE, Defendants and Respondents.

No. 11320.
Decided June 25, 1968.
443 P.2d 16.

Robert A. Tucker (argued), Great Falls, for appellant.

John W. Bonner (argued), Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the State of Montana, acting by and through its State Highway Commission, from a judgment entered pursuant to a verdict in the district court of Lewis and

302

Clark County, the Hon. James Freebourn, district judge, presiding with a jury.

John and Margaret Barnes are the owners of 52.69 acres of land condemned by the plaintiff State for the purpose of constructing Interstate Highway No. 15 between Helena and Great Falls. The land is located approximately one mile north of Craig, in Lewis and Clark County. The jury awarded $14,403 for the land taken and $29,976.83 for depreciation to the remainder.

The Barnes ranch, before the taking, consisted of a unit of 3,164 acres, the shape of which was roughly square with the Missouri River forming the east boundary. The land condemned for the highway is a strip which goes through the ranch from north to south close to the river. The Great Northern Railway had already severed the ranch in this area and the new highway approximately parallels the railroad right-of-way.

Of the land taken, 46.20 acres was for the highway and the remainder for the relocation of access roads to the ranch. To the south, it was necessary to relocate access to the ranch from Craig. The old access road going south to Craig was on bottom land close to the river and the railroad and is now covered by the Interstate. The new access road built by the State is on higher ground to the west of the Interstate. Unlike the old road, there are some rather steep grades on the new road. Evidence was introduced as to whether or not more work was necessary to make the new road safe in all types of weather; however, early in the negotiations concerning the taking the Barneses insisted that the access road to Craig, as now built by the State, go over the area the road now covers as against the State's suggestion of another roadway.

It was also necessary to relocate access to the ranch from the north. The State constructed a new road and paid for the land it required but after construction a slide occurred and for a time this road was impassable. The state guaranteed to either repair the slide area or change the road to the Barnes' satisfac-

tion. During the trial the court allowed testimony as to whether or not additional items were needed to make both the north and south access roads safe and passable in all seasons.

A domestic water well used by the defendants was located in the path of the new highway and was destroytd in the taking. The state drilled a new well for defendants' use to the west of old well. See State Highway Comm'n v. District Court, 147 Mont. 348, 412 P.2d 832. The new well is in the farmyard close to the doors of a garage and machine shop; defendants claim that this location causes them inconvenience in getting machinery in and out of the shop. There was dispute as to whether or not certain additional items were needed to make the well usable and it was agreed that a sand filter should be installed.

The new highway necessitated several other changes in the operation of the ranch. Direct access to water for animals was severed. A drainage culvert was placed under the Interstate to provide normal drainage but free access by cattle to the river is prevented. A sleeve was placed under the highway so that the landowners can pump water to the ranch side of the highway, if they wish. Another intrafarm road was severed and there was conflict in the testimony as to whether or not it had been restored.

Prior to the taking the defendants had 21 acres of irrigated land east of the railroad which was used for feeding cattle and raising pigs. There was also a "holding pen" for bulls on this land. This parcel of land was .4 of a mile from the residence before the taking, now it is necessary for the defendants to drive to the Craig interchange, cross the Interstate, and then double back to the land; a distance of 3 and ¾ miles. Defendants claim this makes it impractical to use the parcel of land for pasture, bull pens or pig raising.

A calf pasture and calving lot needed relocating because the Interstate covered most of the level land on which they were located. A shelter for cows and calves which before the tak-

ing was within sight of the residence was eliminated by the taking.

Approximately two acres lying ½ mile north of the residence is now completely landlocked with the new highway on one side, the railroad and the river on the other; most of this land is sloped rather steeply and is of limited value.

There were only two qualified witnesses testifying as to the value of the land and improvements. The State's witness, Mr. Neil appraised the taking at $5,869 while Mr. Steele, the Barnes' witness, appraised the taking at $9,586. The jury awarded $14,403, some $4,817 above the highest value testified to by either witness.

The State has set forth 21 issues complaining of errors made during the course of the trial. For our consideration and discussion these issues will be grouped as follows:

1. Whether or not the court erred in admitting testimony of the owner, Barnes, and his neighbors concerning value.

2. Whether or not error occurred in overruling objections to testimony concerning a "road problem" and allowing into evidence certain photographs of the temporary slide on the north road.

3. The admission into evidence of testimony by Earl O. Parsons, over objection, as to the cost to the landowners in building certain access roads.

4. The refusal to grant a new trial.

5. Whether or not error occurred in the giving of instructions numbered 27, 22, 5,4-A, 9 and 23.

The issues grouped under No. 1 concern the admission of testimony by Mr. and Mrs. Barnes and their neighbors as to values. We find the court erred in allowing much of the testimony given over the objection of the State and on these grounds alone a new trial is necessary.

In two highway cases, State Highway Comm'n v. Peterson, 134 Mont. 52, 63, 328 P.2d 617, 623, and later in Alexander

v. State Highway Comm'n, 142 Mont. 93, 381 P.2d 780, this Court held; first in the Peterson case:

"Who are competent to give opinions on value of property is generally in the discretion of the trial judge. It must appear that the witness has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally. Lewis, Eminent Domain, § 656, p. 1127 (3rd ed.). One who knows the real property in question and is familiar with the uses to which it may be put, may testify as to its market value. The witness need not know of any sales and he need not be a technical expert."

Later in Alexander v. State Highway Comm'n:

"We now restate the rule to be that an owner, upon *prima facie* proof of ownership, shall be qualified to estimate in a *reasonable way* the value of his property for the use to which he has been putting it. *Such owner is not qualified by virtue of ownership alone* to testify as to its value for other purposes unless he possesses, as any other witness as to value, '*some peculiar means of forming an intelligent and correct judgment as to the value of the property in question* beyond what is presumed to be possessed by men generally.' " (Emphasis ours.)

With this rule to guide us, we will examine the testimony of Mr. and Mrs. Barnes as value witnesses. First, Mrs. Barnes gave no value testimony but testified at length explaining the operations of the ranch before and after the taking.

Mr. Barnes was a value witness, who put the before taking value at $204,590 and testified that he should be given $92,000 compensation for the taking and depreciation of his ranch. It is to this testimony on depreciation that the error goes, due to the failure to lay any foundation that Mr. Barnes testified from "some peculiar means of forming an intelligent and correct judgment as to the value of the property" or facts within his knowledge as to the values he testified to. In addition he did not use accepted procedures in arriving at the value

figures. His value testimony would have been acceptable had he used as a basis for his testimony "market values", "the animal unit method" or had he shown how he arrived at his figures.

His testimony was clearly unacceptable because the basis of his rationale was how he was "personally affected" by the changes and on that basis it became not only conjecture but highly speculative. This type of testimony has been condemned repeatedly by this Court and should not have been admitted. State Highway Comm'n v. Bare, 141 Mont. 288, 377 P.2d 357; State Highway Comm'n v. Smith & Jesson, 141 Mont. 302, 377 P.2d 352; Alexander v. State Highway Comm'n, 147 Mont. 367, 411 P.2d 414.

When coupled with the testimony of his neighbors whose testimony likewise failed to live up to accepted evidentiary standards on values, the record clearly shows the necessity for retrial.

One neighbor, Mr. Frank Sterling, a very successful rancher, was allowed to testify on values based on his "personal opinion" even though he admitted that his testimony was not founded on market values based on sales of comparative property, or any other accepted method of arriving at value. While he most certainly is a highly qualified rancher, he still must show some basis for his valuations, other than his "personal opinion" based on his "experience".

The Peterson case, supra, recognizes that a witness might be so familiar with sales and market values he could have an intelligent and correct judgment of market value of land, even though he is not a technical expert. But here Mr. Sterling admitted that he had no knowledge of sales of any sort. In fact, he stated they were of no import and it was his "personal opinion" that controlled insofar as his testimony was concerned. Under these facts and circumstances the court should have sustained the State's objection to his testimony.

Another neighboring rancher, Clyde Lahti, was

called to give value testimony. When the State requested permission to voir dire on his qualifications as an expert, the trial judge refused and he testified that the values were his "personal opinion"; that he had no knowledge of sales and had made no inquiry into the ranch lands carrying capacity. The State moved to strike Mr. Lahti's testimony but the motion was overruled. The rule has long been in this State that an expert witness giving an opinion upon facts of his own knowledge or based upon his own observations first testify to the facts upon which his opinion is based. State v. Bess, 60 Mont. 558, 199 P. 426; Iron v. Hyde, 110 Mont. 570, 105 P.2d 666. The trial court erred in not allowing voir dire of witness Lahti.

Yet another neighbor, John H. Warhime, was called as "an expert" value witness; again the trial court refused the State's request to voir dire. He too relied on "personal opinion" as to before and after values. The court erred in refusing the State's voir dire examination of witness Warhime.

In the course of getting their case to the jury, the defendants had a Mr. C. R. Steele appear as their expert appraiser. Mr. Steele is by profession a real estate consultant and appraiser with considerable experience in the western states, appearing both in State and Federal courts. He had been hired by Mr. and Mrs. Barnes to make the appraisal on November 1, 1966, just a few weeks before trial and he had not seen the ranch for the purposes of appraisal prior to the highway construction. He testified at length as to the methods he used in arriving at the fair market value of the ranch prior to the taking and the methods used to determine the depreciation of the fair market value of the ranch after the taking. The methods used were the acceptable methods used by other appraisers, including the "market data" approach, the "cost of reproduction less depreciation" and the "income" approach. His testimony set the cost to the State for the land and improvements taken for right-of-way at $9,586 and $52,094 for depreciation to the remainder.

The State moved to strike the Steele testimony on the following basis: "that the appraisal testimony be stricken under Rules of Court, because he is not qualified to give an appraisal of the before value when he never saw it. How can he inspect it?"

We find no error in the court's overruling of the State's motion to strike the Steele testimony, for to compel a landowner to hire professional appraisers at the outset of every eminent domain case would be both costly and in many cases restrictive to negotiated proceedings between the parties involved in the taking. However, in view of the fact this matter is being returned to the district court for a new trial, it should be noted that Steele's testimony concerning certain access road problems should have been restricted as no proper foundation was laid for this testimony.

The next issue concerns the admission into evidence of certain photographs of the slide area on the access road. The court erred in allowing the admission of these photographs because, first, they were outside the scope of issues and second, their admission might well have both confused the jury and prejudiced the State's case. Later testimony established that the slide area would be either repaired or the State would acquire more right-of-way to put in another road. On retrial these photographs should not be introduced.

The next issue to be considered concerns the court's failure to grant a motion for a new trial principally for the reason that the jury's verdict awarded $14,403 for land and improvements taken when the highest testimony given, that of Mr. Steele, was $9,856.

To this error the respondents counter that there is evidence by which the jury could have arrived at this figure and after all it is a just and reasonable figure and is not prejudicial to the State. To support their position the respondents rely upon State Highway Comm'n v. City Service Co., 142 Mont. 559, 385 P.2d 604; and Lewis and Clark County v. Nett, 81 Mont. 261,

263 P. 418. In the City Service case this Court held, in interpreting section 93-9915, R.C.M.1947, that so long as the awards are not excessive and are supported by substantial evidence, they will be upheld even though listed separately, contrary to the statute. This is not the case here for the award is excessive in the amount above the highest figure testified to at the trial.

The earlier case, Lewis and Clark County v. Nett, established that the measure of damages is the fair market value of the land to be condemned, plus the depreciation to land not taken less allowable deductions for benefits. It is not authority for the respondents' claim that it support the theory that a total sum is all that is relevant in the award. We fail to see how this supports the respondents' postion that the jury's action in this case was not erroneous.

It is a fundamental and well established rule of law that the burden of proof as to the amount of damages in condemnation proceedings is upon the property owner. Here, by expert testimony, the highest figure for the land and improvements taken was $9,856 and the trial court erred in denying a motion for new trial when the jury failed to find in this or a lesser amount.

The final issue raised by the appellant concerns the giving of instructions numbered 27, 22, 5, 4A, 9, and 23. Appellant contends, with justification, that they do not state the law, are repetitious, and tended to confuse the jury and thereby prejudicial to the appellant. In view of the fact that this cause must be retried we will not set forth verbatim and various instructions referred to, but note that the State's objections were correct and the instructions should no have been given.

The cause is remanded to the district court with directions to grant a new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, HASWELL and CASTLES, concur.