THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* EARL M. WILCOX, AND VARINNA WILCOX, DEFENDANTS AND RESPONDENTS.

No. 11711.
Submitted March 10, 1970.
Decided April 13, 1970.
Rehearing Denied April 30, 1970.
468 P.2d 749.

James R. Beck, (argued) and Daniel J. Sullivan, Highway Dept., Helena, for plaintiff and appellant.

Corette, Smith & Dean, R. D. Corette, Jr. (argued), Butte, for defendants and respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict in an action in eminent domain by the State Highway Commission. The verdict was in the amount of $20,000.

The State condemned 2.91 acres out of a total of 36.08 acres owned in one parcel by Earl M. and Varinna Wilcox in Granite County.

The land being taken is near Nimrod, Montana. The land owned was not a full 40 acres for the reason that the mainline of the Northern Pacific Railway Company went through the quarter, quarter section. The mainline was in a 400-foot wide right-of-way. Contained within the railway company's 400-foot wide right-of-way was also a 110-foot wide highway right-of-way known as U. S. Highway No. 10.

The construction in the area in question contemplated the building of a four lane divided highway utilizing the right-of-way occupied by the present U. S. Highway No. 10, land acquired from the Northern Pacific Railway Company, and 2.91 acres owned by Earl and Varinna Wilcox, respondents herein.

No frontage road was to be constructed in this particular area therefore there would be no ingress or egress to or from the interstate highway.

The 2.91 acres taken were part of a 35.81-acre tract lying northerly of the present U. S. Highway No. 10. The respondents also owned a tract of .27 of an acre which was located southerly of the Northern Pacific right-of-way and along the Clark Ford River. A power line of Bonneville Power crossed the land.

Located on the 35.81-acre tract were the respondent's house, corrals, various sheds and a root cellar.

The issues presented for review concern what we will describe as the quality of the evidence of value.

The first of these is the matter of the value testimony of the owner.

Mr. Wilcox, the owner, was the first witness called. He described the property in question, its location, the buildings and the site improvements that were located on it. He also testified as to the access available to the two portions of his property and how it would be affected by the construction of the interstate highway. Over objections by the State, he stated that his purpose in buying the property was to have a retirement home.

At this point, Wilcox was asked whether he had an opinion as to the market value of his property prior to the taking, to which he replied that he did. When asked what this opinion was, the State objected on the grounds that there was no proper foundation laid. Argument was made to the court after which Wilcox stated his age as of the date of taking. Again he was asked whether he had an opinion as to the market value of the property prior to the taking and again objection was made to the lack of foundation.

The trial court overruled the objection and the landowner testified that it was worth $40,000.

Wilcox was next asked what his opinion was as to the value of the property actually taken; the State objected and request was made to voir dire the witness. On voir dire he testified that he considered sales of property near Clinton;

however, he could not specify any particular sale. When further questioned about these sales, he stated they were one-acre sales without improvements on them, but that he was not using them in order to make a determination of the value of his property. When asked what basis he used to value his property, he said:

"Well, it was my property and I figured on living there the rest of my life."

After this, the State objected to any further testimony as to value by this witness on the grounds that he had no reasonable basis on which to value his land. Argument was had before the court, and so Wilcox attempted another tack. He stated that he had attempted to purchase a place comparable to the subject property, but had been unable to find one. The sale at Clinton was inquired into and the State's objection as to the price paid was sustained. Wilcox repeated his testimony relative to looking for replacement property and again stated he could find none comparable to his present property. He was then asked whether this was the basis on which he based his opinion of $40,000, to which he replied in the affirmative. The State renewed its objection to the foundation and the matter was argued to the court.

Trial then adjourned for noon recess following which Wilcox related how he had purchased his property and improved it since the purchase. He was asked about the sale of some lots near Drummond, purchased by one Ed Reeves from a Carl Firestone. He said Reeves had paid $2,000 for two half-acre lots. Wilcox was then asked what his opinion was as to the value of his property prior to the taking, again the State objected and permission to voir dire the witness was granted.

Upon voir dire examination, Wilcox stated he knew of another one-acre sale near Clinton and that this was the only other sale he had examined. Testimony relative to this sale was objected to on the grounds that it was not comparable

in size to the subject property, which objection was over-ruled.

Wilcox was then allowed, over objection, to testify that he thought his land and improvements were worth $40,000 before the taking and worth nothing afterwards.

The State argues that Wilcox, the owner, should not have been allowed to testify as to value. It contends that Wilcox did not possess "some peculiar means of forming an intelligent and correct judgment as to the value of the property." In support of this the State relies on State Highway Comm'n v. Barnes, 151 Mont. 300, 443 P.2d 16. It further contends that Wilcox in all of his foundation testimony only demonstrated "mere ownership"; and under *Barnes*, he did not have any peculiar means of forming an intelligent and correct judgment as to the value.

We disagree, as did the trial judge. The value given by Wilcox was based on the property being used as a place for country living. This was how the property was used. He was not testifying to value for purposes other than as he was using the property on the date of the taking. However, Wilcox testified to much more than mere ownership. He testified that:

1. He had been the property owner for 15 years.
2. He lived on the property for 5 years.
3. He had refurbished the house inside and out.
4. He was familiar with the nature of the fertile soil on the property.
5. He knew and valued the weather conditions at the location of the property.
6. He grew crops, including hay, vegetables, potatoes and flowers.
7. He testified to uninterrupted and undisturbed and convenient access.
8. He had knowledge of sales of other property which qualified him to give a value opinion.

9. He knew that after the State took the property it would have no value as was conceded by the State.

Certainly the knowledge and information on which the landowner based his opinion was "beyond what is presumed to be possessed by men generally." (See State v. Peterson, 134 Mont. 52, 328 P.2d 617.)

The State contends that Wilcox did not possess any knowledge of the real estate market. On the contrary, he testified to four sales of real estate in the area which gave him a foundation on which to base his opinion. The State is attempting to usurp the right and privilege of the landowner to testify unless he is an expert appraiser. This is not the rule in *Barnes*.

This Court many times, and recently in the *Barnes* case, has held it is in the discretion of the trial judge to determine who are competent to give opinions on value.

In the instant case, after lengthly examination and voir dire of landowner Wilcox with regard to his qualifications, the trial court found:

"The objection will be overruled. The testimony of the witness now shows that he has more than just a mere ownership interest in this land, and that he has made an investigation of land values in the immediate area, and from those land values, and his own investment in the property, shows that he has more than just what a reasonable man would have in determining the value, and, as such, he may testify as to the value that he places on the property."

At its best the State's argument is a jury argument. We find no merit.

Secondly, one Louis J. Piche testified as an expert on behalf of the landowners. Piche has lived in the Drummond area for 58 years and has been in the insurance and real estate business for 30 years. He was director of Land Classification for Granite County during 1959 and 1960 and over the years has built and developed properties in excess of $400,000,

added two additions to the original townsite of Drummond, and in recent years has been doing appraisal work in western Montana.

Piche appraised the Wilcox property using as a basis for the opinion, his background, his study and observation of the property, information received from the Wilcoxes, and sales of property in the area of the Wilcox property.

Piche used several comparable sales for the flatter lands which are located within ½ to 1½ miles of Drummond. The State objected to the comparables as being too remote, however, the court overruled the objection. Ironically, the State in its case used comparables further from the Wilcox property than those used by Piche.

Based on his background, knowledge of the area, study of the property, and use of sales in the market, Piche testified that, in his opinion, the property before the taking had a value of $24,470. There was no objection. Piche illustrated the values he had given different portions of the property, its various amenities and improvements; concluding that the property was valueless after the taking. This, of course, means the before value of the property is the just compensation due the Wilcoxes. The State agreed the remainder of the property was landlocked and had only "token or nominal value". The State's only witness W. Glen Tonkin, valued the remaining property at $100 which he admitted was mere speculation.

Piche was a qualified real estate appraiser. The basis on which he gave his opinion as to value was placed before the jury. The State contends Piche's entire testimony should be disregarded for two reasons. First, because the Wilcox property did not abut a public highway and therefore had no access, and second, Piche did not consider the Bonneville easement for the power line heretofore mentioned.

It is unquestioned and the trial court found that for at least 5 years the Wilcoxes had uninterrupted access to their property. Additionally, access was always available to the

property referred to as the "triangle". Wilcoxes freely used all property inside the U. S. Highway 10 fence; they repaired the fence and no suggestion was ever made that it should be relocated. Mrs. Wilcox stated the Northern Pacific asked permission to park mowers and vehicles inside the fence.

This Court in Montana State Highway Comm'n v. Jacobs, 150 Mont. 322, 328, 435 P.2d 274, 278, wherein an expert witness ignored lack of utilities, schools and access when comparing a sale with the property being condemned, stated:

"These statements go to the weight that his opinion carried with the jury. They may tend to weaken his testimony but as a qualified expert witness he could make them."

State v. Jacobs stands for the proposition that alleged weaknesses in expert testimony go to the weight of evidence determination by the jury. The basis for Piche's opinion was entirely before the jury and the jury was instructed to consider the opinion given and the reasons for it. The jury was to give the opinion testimony the weight they deemed it entitled and could have properly rejected the opinion entirely.

The trial judge made the determination that Piche was qualified to testify as an expert and give value testimony. This Court has held many times, and recently in State Highway Comm'n v. Keneally, 142 Mont. 256, 262, 384 P.2d 770, 773, that:

"It is a matter of discretion of the trial judge to determine witnesses who are competent to give opinions on property valuation."

We find no merit in the State's contentions as to Piche's testimony.

The final question posed is: Was there sufficient evidence to uphold the verdict? We find there was. There were three value witnesses presented to the jury. One testified to $40,000; one to $24,000; and one to about $6,700. The verdict was $20,000. This is simply a jury case. In State v. Peterson, 134 Mont. 52, 58, 328 P.2d 617, we said:

"In eminent domain proceedings, the jury findings will generally not be disturbed on appeal unless they are so obviously and palpably out of proportion to the injury done as to be in excess of just compensation * * *".

The State made a motion for new trial dated April 10, 1969. Hearing was held on the motion and counsel argued the case to the court. The trial judge was again given the opportunity to review the evidence and the legal issues involved. The State's motion for new trial was denied.

At the trial jury heard testimony on value from Piche, Wilcox and Tonkin. Through able direct and cross-examination the strong and weak points of the testimony of each witness was placed before the jury. The jury was properly instructed on all facets of the case and argument to the jury was made concerning all testimony. It cannot be said under the facts and circumstances here involved that a verdict of $20,000 is "obviously and palpably out of proportion to the injury done."

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and HASWELL, concur.