CITY OF THREE FORKS, Plaintiff and Respondent, v. STATE OF MONTANA STATE HIGHWAY COMMISSION, Defendant and Appellant.

No. 11848.
Decided Feb. 9, 1971.
Rehearing Denied Feb. 24, 1971.
480 P.2d 826.

James R. Beck and Donald A. Douglas, Helena, James R. Beck, Highway Legal Dept. argued, Helena, for defendant-appellant.

Landoe & Gary, Bozeman, Joseph B. Gary, argued, Bozeman, Harold L. Allen, Three Forks, argued, for plaintiff-respondent.

MR. JUSTICE CASTLES delivered the opinion of the court.

The defendant, State Highway Commission, appeals from a judgment in the sum of $32,500 together with interest and costs, entered by the district court of the eighteenth judicial district with a jury, in favor of the plaintiff, the City of Three Forks. The court further awarded defendant the fee simple interest in the land owned by plaintiff. The appeal was taken after an order of the trial court denied defendant's motion for a new trial.

This action arose out of the construction of an interstate highway on land owned by the City of Three Forks without the same being condemned, nor grant of possession given to the State Highway Commission. The City's amended complaint sought damages for the construction of the highway on its property which it alleged was suitable as a sewage disposal site. The defendant answered that the lands were public and were taken for public use; that the State was not required to pay compensation; or, in the alternative, that the compensation to be paid to the City was the fair market value of the land taken and damage to the remainder.

The somewhat unique facts of the case are: The City of Three Forks owned 2.66 acres of land which is located northeast of the City and abuts a channel of the Jefferson River. An appraiser for the State Highway Commission had been informed that the land in question was owned by another; that is, one other than the City of Three Forks. The State began its survey for the Interstate highway; it was then notified by the City that the land belonged to the City; but, still being of the impression that it had purchased the land, the State commenced construc-

tion of the Interstate highway. The construction of the highway resulted in the taking of 2.05 acres of this land. All that was located on the land was an unused 12'' sewer line which had once run from the north edge of the City to the property. At the time of construction of the highway, the land was not being used as a sewer site.

At the trial the City revealed that it had been plagued with sewer problems for some time. Raw sewage was being dumped into the Jefferson River and the City was in the process of finding a site for a sewage plant to remedy the unacceptable situation. It was at this time that it was discovered the City owned the 2.66 acres. This land was then considered as one of three prospective locations for a sewage plant. Testimony revealed this particular site was the most acceptable of the three. The mayor of the City testified that since the land in question was the best suited for a sewage plant, its value was $85,000. The State's appraiser testified that the value of the property taken was $532 and the value of the remaining property was $2.

The issues, as stated by appellant, are:

1. Whether the State must pay a city for the value of land taken and the depreciation in value to the property remaining, where the property is taken for a more necessary public use?

2. When an opinion of the value of property is totally without foundation is it error for the trial court to admit the opinion into evidence?

3. In an inverse condemnation case, is it error for the trial court to instruct the jury that the measure of damages is the amount which will compensate for all detriments proximately caused thereby whether it could have been anticipated or not?

4. Whether it was error to give an instruction as to damages when there is no evidence of damages other than the value of the land taken?

We deem it of some moment to comment on the pretrial proceedings here because it may give the reader of this opinion some insight into the dilemma of the trial court and the Court in applying the usual rules as to issues, instructions, evidentiary

rulings, etc. The State did not condemn, apparently because of a mistake in abstracts of title. After discovery of the mistake, the State did nothing to obtain title; rather it rested on the State's alleged sovereign right to take public or city property for highway use; nor did the City of Three Forks do anything at that time.

Subsequently the City sued as and for a trespass by the State in an action sounding in tort. The State by various motions and answers sought to establish sovereign immunity. However, the trial court allowed an amended complaint which, although far from a model of clarity, alleged facts sufficient to establish an inverse condemnation action to require payment by the State. However, the State's action, evidence, and its counsel's activities continued to sound in eminent domain.

First, it was the State's contention that this was "public property" and therefore no compensation is required to be paid. Art. III, Sec. 14 of the Montana Constitution provides:

"Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner."

Section 93-9904, R.C.M.1947, sub-section (3) defines private property as follows:

"3. Property appropriated to public use; but such property must not be taken unless for a more necessary public use than that to which it has already been appropriated".

In interpreting a similar statute, the Utah court in State By and Through Road Commission v. Salt Lake City Public Board of Education, 13 Utah 2d 56, 368 P.2d 468, 469, stated:

"It is important to note that the act shows that the legislature had in mind that necessity may require that property devoted to one public use may be taken from its public owner if it was required for a different and more necessary public use. But in spite of this awareness, it made no distinction between the method of taking public or private property. It is true that the statute does not state specifically whether compensation is to be paid to the public agency from which it is taken. * * *

"From the language of the eminent domain statute, as well as upon the basis of its purpose and practical application, it is our conclusion that the legislature intended that public property * * * should be taken and compensated for the same as if it had been taken from a private owner."

We agree with the above quoted position that the legislature intended property held by a city, such as here, be only taken by the State after compensation is paid. This property was owned by the City of Three Forks and its citizens, not the State of Montana or the federal government. It was taken for a more necessary public use and compensation must be paid.

The State's second issue, stated another way, is that the mayor of the City should not have been allowed to testify as to his opinion of the value of the land taken. It contends the mayor did not possess "some peculiar means of forming an intelligent and correct judgment as to the value of the property in question". In support of this the State relies on the proposition that since the mayor is not the owner of the land, he is no more qualified to testify as to its value than any other inhabitant of the City. Although we agree the rule that a property owner may testify as to its value has no application, it was shown at the trial that the mayor had more intimate knowledge of the nature and quality of the land than any other inhabitant of the City.

1. The mayor has lived since his birth in the Three Forks area

2. He has flown over and studied the area many times.

3. At the time of the trial, he had been the mayor of the city for a year and prior to that had served on the city council for six years.

4. He had worked closely with engineers who were studying the sewage problem of the City and searching for a site to correct the problem.

These facts furnish a "means of forming an intelligent and

correct judgment as to the value of the property" in question. State Highway Comm'n v. Wilcox, 155 Mont. 176, 468 P.2d 749.

Once it has been determined that a witness, such as the mayor in this case, is competent to testify as to value, it is still necessary to determine whether the opinion as to value is founded on the evidence, for it must not be based on an unsupported assumption, conjecture or speculation.

This Court in Montana State Highway Comm'n v. Jacobs, 150 Mont. 322, 326, 435 P.2d 274, 277, said:

"Compensation is based on the highest and best use to which the land is adaptable * * *."

Here, the land could have been adapted as a flood free site for a sewage disposal facility which was close to the City and; most important, was already owned by the City. In the mayor's opinion the value of the land to the City for use as a sewage disposal site was $85,000. We find no merit in the State's contentions as to the mayor's testimony. The jury after having considered the facts as to the value of the land to the City awarded $32,500. This Court stated in State v. Peterson, 134 Mont. 52, 58, 328 P.2d 617, 620:

"In eminent domain proceedings, the jury findings will generally not be disturbed on appeal unless they are so obviously and palpably out of proportion to the injury done as to be in excess of just compensation * * *".

The State's third specification of error is that the trial court erred in giving Court's Instruction No. 9, which reads as follows:

"You are instructed that for the breach of an obligation not arising from contract the measure of damages is the amount which will compensate for all detriments proximately caused thereby whether it could have been anticipated or not."

This instruction was objected to by the State on the ground that it was the measure of damages for a tort case and not an

inverse condemnation case. The instruction offered by the State in lieu of the given instruction stated the measure of damages as follows:

"You are to ascertain the fair market value of the property actually taken from the plaintiff for highway construction, and in addition thereto, the depreciation, if any, to the remainder of plaintiff's property, arising by reason of this taking."

The plaintiff City insisted that its suit was for damages for the breach of the constitutional obligation to pay just compensation before taking property for public use. Article III, sec. 14, Montana Constitution. The State constructed a highway on the City's land without having first paid just compensation. The State did not follow the constitutional mandate.

The judgment of the court awarded the City money damages and awarded the State fee simple title in the property in question. Therefore, looking at the substance and not the form, this is a condemnation, or rather more properly, an inverse condemnation suit  The proper measure of damages in a condemnation suit is the market value of the land taken and the depreciation in value to the land remaining. State Highway Comm'n v. Tubbs, 147 Mont. 296, 411 P.2d 739. Thus in a condemnation case it would be error to give an instruction which would allow the jury to award damages in excess or in addition to the fair market value of the land and depreciation in value to the land remaining.

However, the issue before this Court is whether the measure of damages in an inverse condemnation case is the same as in a condemnation case.

The measure of damages contained in court's Instruction No. 9 would be properly awarded to a landowner for the wrongful trespass of another, for the instruction is taken from section 17-401, R.C.M.1947, which is a general instruction for the measure of damages in tort. But in the absence of a waiver of immunity, the State may not be liable for torts committed while engaged in a purely governmental function. Coldwater v. State Highway Comm'n, 118 Mont. 65, 162 P.2d 772. The

recognized exception to this rule is Article III, sec. 14, Montana Constitution. Alexander v. State Highway Comm'n, 142 Mont. 93, 381 P.2d 780. When the State takes private property for a public use without just compensation having first been paid, the State has exercised its governmental power without proceeding in accordance with the procedure required by law, ''The effect of (Article III, sec. 14) is to waive immunity of the state where private property is taken or damaged for public purposes.'' 3 Nichols on Eminent Domain 11, Note 15.1, citing Granone v. County of Los Angeles, 231 C.A.2d 629, 42 Cal.Rptr. 34.

We affirm the measure of damages used in the case at bar. In accordance with the authority cited above, the trial court properly held that a state agency which takes property in violation of the Constitution, without prior judicial authority for the taking, should pay trespass damages in a suit by a landowner to recover for this illegal taking. If in such instance the landowner should receive only the value of the land taken and any diminution in the remaining land, the State is thus liable only for the same amount as if it had brought a condemnation proceeding in accordance with the law. If that should be the holding, judicial condemnation proceedings required by the constitution are a useless formality, and at the same time the landowner is deprived of the additional compensation to which he is entitled for the violation of his constitutional property right to be free from unlawful trespasses and takings of his land, whether by the State or by private persons.

Therefore, the instruction given as to the measure of damages is in accordance with the type of action prosecuted here, and the City is entitled to recover for the value of land taken and all other detriments proximately caused thereby, whether anticipated or not.

The State's last specification of error is that it is error to give an instruction on an issue on which there is no evidence. The evidence at the trial on damages was limited to the value of the land as a sewer site. It is the State's contention that, since the

City failed in its attempts to prove elements of damage other than the value of the land as a sewer site, and that Instruction No. 9 related to elements of damage other than the value of land, the trial court erred. We have already established that it was not error to give Instruction No. 9. The trial court may have erred in precluding the City from introducing evidence on elements other than the value of land if, and only if, the City had complained about it on appeal. In addition, the trial judge refused to permit such evidence on the grounds that it was irrelevant, and looking at the type of foundation laid and how speculative the evidence was, we are not convinced that the trial judge was incorrect.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL and DALY, concur.