No. 11816

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE STATE HIGHWAY COMMISSION
OF THE STATE OF MONTANA,

                    Plaintiff and Respondent,

    -vs-

HAZEL MARSH, MALCOLM W. ENMAN
and MARGERY H. ENMAN,

                    Defendants and Appellants.

---

Appeal from:  District Court of the Third Judicial District,
               Honorable Sid G. Stewart, Judge presiding.

Counsel of Record:

    For Appellants:

        Knight, Dahood and Mackay, Anaconda, Montana
        Wade J. Dahood argued, Anaconda, Montana
        Raymond J. Fox, Missoula, Montana

    For Respondent:

        Daniel J. Sullivan argued and Donald A. Douglas
        argued, Helena, Montana

---

                    Submitted:  September 18, 1974

                    Decided:  OCT 16 1974

Filed:  OCT 16 1974

*Thomas J. Kearney*
                    Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

This is an appeal by a landowner from a jury verdict in a condemnation action tried on June 4, 1969.

Hazel Marsh owns a ranch located in an area known as Bearmouth, Montana, some twelve miles west of Drummond, Montana.

She has owned the ranch since 1961. At the time of this action she had leased the entire property to Malcolm W. and Margery H. Enman, who operated the property as a cattle ranch.

In the late 1960's the State Highway Commission determined the necessity to condemn a portion of the ranch property for use in the construction of a new interstate highway. The taking consisted of the land needed for the highway, a gravel source, rest areas, and some portions of the ranch which would become totally landlocked and thereby valueless to the ranch operation.

The take here consisted of some land owned by Mrs. Marsh between the Clarks Fork River and the Interstate roadway. The amount of total take was in question and never fully presented to the jury.

The case went to trial on the question of damages only, the necessity for the condemnation having been determined by the district court. The jury returned a verdict for the appellant in the amount of $52,000. The appellant presents three issues for our review:

1. Whether it was error to refuse to allow Hazel Marsh, the landowner, to testify as to her opinion of the value of the property taken.

2. Whether it was error to refuse to allow the lessee to testify as to his loss and damages.

3. Whether it was error to strike the testimony of Marsh's expert witness as to alleged severance damages.

On appeal this Court rendered an opinion on May 6, 1974, remanding the case to the district court for a new trial. On

petition for rehearing the opinion was withdrawn, the cause reargued and this opinion follows:

Several grounds enumerated in the petitioner's motion for rehearing and argued at rehearing will be covered in this opinion.

The first issue is directed at the trial court's striking the testimony of Hazel Marsh, the landowner.

Mrs. Marsh testified that she had been the owner of the ranch since 1961 and also indicated that a considerable part of her life had been spent on the ranch. She was the foster child of the William Lannens, long time owners of the land, and had been raised on the ranch. In addition she indicated by her testimony that during her marriage she had spent some time on the ranch.

Her testimony also revealed a familiarity with the various types of land making up the ranch, its size and makeup as to deeded and leased land. She testified that there were 550 cultivated acres, about 6,000 acres of pasture land, plus some 1,100 acres of timber land. In addition she was familiar with the number of miles of stream or river frontage and the amount of acreage to be taken by the highway project.

In addition, she is a woman of considerable education. She is a college graduate with a Master of Arts degree in Library Science, worked for three years at Notre Dame University as a librarian and has done other work in that field.

With this background testimony before the trial court the appellant was asked "Are you familiar with the market value of the lands which you own?", and she answered that she was, on the basis of "different offers that I have had for the property, and * * *", at which time a motion to strike was made and granted. An effort was made to get "market value" in and the court denied its admission on the basis of a recent Supreme Court case of State Highway Commission v. Barnes, 151 Mont. 300, 305, 443 P.2d 16. In ruling on the objection, the judge stated:

" * * * The Montana Supreme Court, in a very
recent decision, has stated that a landowner
cannot place a value on his land unless they
have qualifications pretty much the same or
similar to an expert. The mere fact they own
the property, and think they have a value for
it, is not a basis alone for placing a valuation
on the property, according to that Supreme Court
decision."

That was the law to guide the court, but Barnes is factually

different than those before us here. In Barnes we noted:

" * * * It is to this testimony on depreciation
that the error goes, due to the failure to lay any
foundation that Mr. Barnes testified from 'some
peculiar means of forming an intelligent and
correct judgment as to the value of the property'
or facts within his knowledge as to values he
testified to. In addition he did not use accepted
procedures in arriving at the value figures. His
value testimony would have been acceptable had he
used as a basis for his testimony 'market values',
'the animal unit method' or had he shown how he
arrived at his figures."

Here the court cut off the giving of any figure on "market

values" and prevented trial counsel's further developing "the

animal unit method" or any other she might have arrived at. Coun-

sel for appellant did not develop his witness into these areas,

however the fact remains, that up until the motion to strike, the

witness had been developed to a point that indicated she had /"some
                                                               more than

peculiar means of forming an intelligent and correct judgment as

to the value of the property". We find the court erred in its

ruling necessitating a retrial of the case.

A recent Montana Law Review article, "The Montana Law of

Valuation in Eminent Domain" by John F. Sullivan, Vol. 34, No. 1,

p. 90, notes that the problem of the landowner exception is wheth-

er it is still the law of Montana after the cases of State High-

way Comm'n v. Barnes, supra; State Highway Comm'n v. Wilcox, 155

Mont. 176, 181, 468 P.2d 749; Alexander v. State Highway Comm'n,

142 Mont. 93, 110; 381 P.2d 780; State v. Peterson, 134 Mont. 52,

63, 328 P.2d 617: Three Forks v. State Highway, 156 Mont. 392, 480

P.2d 826; State Highway Comm'n v. Bennett, 161 Mont. 510, 513 P.2d

- 4 -

5, 30 St.Rep. 702, State Highway Comm'n v. Keneally, 142 Mont. 256, 384 P.2d 770, and recommends that the matter is one for legislative action. Particular note is made of allowing landowners' testimony and a recommendation is made that only experts be allowed to testify.

However, by the very nature of this type of action, where contrary to other civil actions the burden of proof must be borne by the defendant landowner to prove just compensation in excess of that offered by the condemnor state, we restate the rule below for this jurisdiction. This Court in Alexander reviewed the entire line of Montana cases allowing an owner to testify as to the value of his property, and after citing the rule as stated therein, at page 110, concluded:

> "We now restate the rule to be that an owner, upon prima facie proof of ownership, shall be qualified to estimate in a reasonable way the value of his property for the use to which he has been putting it. Such owner is not qualified by virtue of ownership alone to testify as to its value for other purposes unless he possess, as any other witness as to value, 'some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally.'"

It should be noted that as stated, this basic landowner-witness rule consists of two parts:

(1) The landowner on prima facie showing of ownership, may testify as to value, so long as:

    a. His testimony is "reasonable", and

    b. The value testified to is for the uses to which he is putting the land.

(2) However, if the landowner desires to testify as to value "as to other purposes", then:

    a. He must have "some peculiar means of forming an intelligent and correct judgment * * * beyond what is presumed to be possessed by men generally."

As so stated under (1), the appellant should have been allowed to to qualify as a witness.

- 5 -

Issue No. 2 is directed at the court's refusal to allow the lessee to testify as to his loss and damages. We find no error in the court's holding. First, the lessee Enman's loss was never offered. Enman was asked how the take would affect the operation of the ranch. The State objected and counsel for appellant explained that the question was offered only to show how the operation of the ranch was affected. On this basis the court permitted Enman to answer but directed that the answer go only to the operation of the ranch and not to any loss. Second, the lease itself, which was in evidence, provided that any condemnation award went to the owner and not the lessee.

As an additional reason for granting a new trial it appears from the outset that this case was a confusing factual case for the jury, due to the fact that the maps used during trial were not marked so as to tie into the testimony given at the trial. In addition the transcript is replete with inconsistencies as to the exact amount of acreage taken by the State and landlocked due to the taking. To illustrate:

1. Hazel Marsh testified that the actual take amounted to 183 acres of which 34 were landlocked.

2. Rodenberger testified that the actual amount taken was 192.79 acres of which 43.10 acres were landlocked.

3. Ivan Shaw, the state's appraiser, based his appraisal on a take of 178.22 acres.

In addition it appeared from the argument, both at the original hearing and at the rehearing, that even at the time of the trial the engineers did not have all the facts and figures of the take so as to enable counsel on both sides of the table to be exact in getting the case to the jury. This Court has examined the testimony and exhibits and is itself unable to determine either the total take or the various acreages affecting

- 6 -

the ultimate question of damages.

The cause is remanded to the district court with directions to grant a new trial.

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices