No. 13599

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

THE STATE OF MONTANA, ACTING BY AND THROUGH
THE STATE HIGHWAY COMMISSION OF THE STATE OF
MONTANA,

                    Plaintiff and Appellant,

        -vs-

HAZEL MARSH,

                    Defendant and Respondent.

_____

Appeal from:   District Court of the Third Judicial District,
               Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Daniel J. Sullivan argued, Helena, Montana

    For Respondent:

        Mulroney, Delaney, Dalby and Mudd, Missoula, Montana
        Dexter L. Delaney argued, Missoula, Montana

_____

                          Submitted:  November 30, 1977

                          Decided:JAN 20 1978

Filed: JAN 20 1978


_Thomas J. Kearney_
                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a judgment rendered in a condemnation action involving the acquisition of property by the state for the purpose of interstate highway construction.

This case came before this Court previously on an appeal brought by the landowner, Hazel Marsh, from the judgment rendered in the original District Court trial, State Hwy Comm'n v. Marsh (1974), 165 Mont. 198, 527 P.2d 573. In that case we ordered a new trial, holding that the District Court committed reversible error in not allowing the landowner to express an opinion on the value of her land.

The land condemned by the state consists of 152.5 acres in 13 different parcels of irregular shape. The parcels range in size from .04 acre to 113.53 acres. As a result of the "take", 46.08 other acres are landlocked and the landowner is totally deprived of the use of this land. The total "take" is therefore 198.58 acres. The parcels of land taken are immediately adjacent to 4-1/2 miles of Clark Fork River frontage in Granite County, Montana.

This case was retried to a jury in April, 1976. At trial the landowner testified as to her ownership of the land in question and that the land was being used as a cattle ranch. She testified that her ranch consisted of some 7,000 acres of deeded land along with 1,860 acres of leased land. The landowner expressed her familiarity with the boundaries and terrain of both her ranch in toto and the condemned land. She testified that the portion of her ranch which abuts the Clark Fork River is the most valuable portion because it contains rich cropland, water for her livestock, and in addition, recreational potential. The carrying capacity of the ranch was 450 animal units prior to the taking and as a direct result of the taking the capacity has been decreased by approximately 125 animal units.

The landowner was allowed to testify as to her opinion of the value of the taken land. She placed the value of the 198.58 acres at $800 per acre. The record clearly reflects that the basis for this opinion was a comparison of her land with land involved in three sales of small tracts of river frontage located in the immediate area. Two of these tracts were sold for recreational uses and the third for a use unrelated to cattle ranching.

Thereafter, the landowner's appraiser, Roy Rodenberger, testified that the highest and best use of the property in question was as an operating cattle ranch with the strong potential for river frontage tracts. Rodenberger valued the property according to "the animal unit method". Under this method the total ranch value was computed by multiplying the market price per animal unit as derived from similar ranch operations by the total carrying capacity. The decrease in carrying capacity directly attributable to the take, 123 animal units, was then multiplied by market value per unit in order to determine the loss to the total ranch operation caused by the take.

Rodenberger also testified as to other sales of small parcels of river frontage of which he was aware. He compared the price per acre paid in the other sales with his loss per acre calculated from the animal unit method as a cross check. The loss per acre calculated from the animal unit method was computed by use of the following formula:

$$\frac{\text{animal units lost} \quad x \quad \text{value of an animal unit}}{\text{number of acres taken}}$$

A figure of $732 per acre was determined by use of this formula and Rodenberger testified that this figure compared fairly with the amounts paid per acre for similar properties.

On April 23, 1976, the jury returned a verdict for the landowner for $92,096. The landowner then moved for an additional

- 3 -

award of $32,312.23 to be included in the judgment. This amount represented her alleged necessary expenses of litigation. At the hearing on her motion, the District Court took oral argument and received various affidavits in support of the expenses she claimed. The record does not reveal whether oral testimony or exhibits other than affidavits supporting the expenses were presented.

On May 18, 1976, the District Court entered judgment awarding the landowner, Hazel Marsh, $104,726.70. This amount represented the balance of the verdict which she had not previously withdrawn, plus 10 percent interest on that balance from the date the state took possession of the property in question, plus $32,312.23 as her necessary expenses of litigation. The state appeals.

Four issues are before this Court on appeal:

1. Whether the District Court erred in refusing to strike the landowner's appraisal when said appraisal was based on a valuation derived from the sale of three small tracts of land whose use was different than that of landowner's ranch?

2. Whether the District Court erred in admitting the testimony of Rodenberger, the landowner's appraiser, relative to the valuation of the landowner's property for a recreational use in small tracts rather than as a whole?

3. Whether the District Court erred in allowing the landowner her necessary expenses of litigation based on a record which did not include oral testimony nor exhibits other than the affidavits presented here?

4. Whether the District Court properly computed the rate of interest to be paid upon the judgment?

Both parties agree that State v. Marsh, supra, and the cases cited therein are controlling in the resolution of appellant's

first issue. In Marsh, quoting in part from Alexander v. State (1963), 142 Mont. 93, 110, 381 P.2d 780, we stated:

> "'We now restate the rule to be that an owner, upon prima facie proof of ownership, shall be qualified to estimate in a reasonable way the value of his property for the use to which he has been putting it. Such owner is not qualified by virtue of ownership alone to testify as to its value for other purposes unless he possess, as any other witness as to value, "some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally"'.
>
> "It should be noted that as stated, this basic landowner-witness rule consists of two parts:
>
> "(1) The landowner on prima facie showing of ownership may testify as to value so long as:
>
> "(a) His testimony is 'reasonable', and
>
> "(b) The value testified to is for the uses to which he is putting the land.
>
> "(2) However, if the landowner desires to testify as to value 'as to other purposes', then:
>
> "(a) He must have 'some peculiar means of forming an intelligent and correct judgment * * * beyond what is presumed to be possessed by men generally.'" 165 Mont. 203.

See also: Alexander v. State Highway Commission, supra; Rauser v. Toston Irrigation District (1977), ____Mont.____, 565 P.2d 632, 641, 34 St.Rep. 496.

The state contends that the landowner has a qualified right to express an opinion as to the value of her property for the purpose to which the property is being used. The state, however, argues that here the landowner lacks the requisite knowledge to enable her to testify as to the value of her land for purposes other than the purpose for which it is being used. We disagree.

The landowner had lived on the ranch in question for a number of years. She was well aware of the recreational amenities of her Clark Fork River frontage. She carefully studied two

sales of small tracts of property for recreational purposes in the area. She participated in the third sale which she used as a basis for her opinion. The sum total of these facts certainly bestowed upon the landowner herein a means of forming an intelligent and correct judgment of the value of her land beyond what is possessed by men generally.

In the second issue the state urges that the District Court erred in allowing the landowner's expert, Roy Rodenberger, to check his animal unit valuation of the ranch with the price per acre paid for various small tracts of recreational property. The basis for this contention is an argument that the property's highest and best use was for a cattle ranch and testimony as to recreational purposes was not admissible. Such is not the case. Rodenberger testified on two occasions that the highest and best use of the property was as an operating cattle ranch with a strong potential for river frontage tracts. The District Court, in the exercise of its discretion, chose to admit such evidence and we find no reason to overturn its decision.

Appellant's third issue concerns the District Court's award of necessary expenses of litigation. After the verdict, the landowner filed a "Motion for Award of Necessary Expenses of Litigation and Memorandum of Costs and Disbursements" and a "Motion for Award of Necessary Expenses of Litigation and Motion for Judgment for Final Order of Condemnation".

The necessary expenses the landowner claimed were:

Appraisal fee of expert appraiser Roy Rodenberger for appraisal and attendance at five days of trial in the above captioned action at $150 per day including mileage, Missoula to Philipsburg; preparation of trial exhibits and other matters related to appraisal and testimony at trial . . . .$ 3,300.00

Expert witness fee of James Lackman for testimony at trial and in preparation for trial testimony . . . 400.00

Expert witness fee of Hank Deschenes for testimony at trial and in preparation for trial testimony . . . 400.00

- 6 -

Aerial photographs, Scott Brown Photography . . . . . . 562.70

Evergreen Air Service incident to taking
   aerial photographs . . . . . . . . . . . . . . . . . 66.00

Appellate costs in State vs. Marsh, including
   preparation of transcript, printing of brief,
   and attorney fees incurred by Defendant to

        Wade Dahood . . . . . . . . . . . . $2,560.00
        Raymond Fox . . . . . . . . . . . . . 642.37

        TOTAL . . . . . . . . . . . . . . . . . . . . . . .3,202.37

Attorney fees . . . . . . . . . . . . . . . . . . . . . 24,138.16

Motel charges, meals and mileage incurred by
   Dexter L. Delaney in pretrial preparation
   during the period of the trial . . . . . . . . . . . . 243.00

        TOTAL               $32,312.23

In support of these motions the landowner's attorney filed an affidavit justifying the expenditures. Regarding the attorney fees, affiant stated that the claim represented the amount the landowner owed her attorney under a contingent fee contract in which the landowner's attorneys were to receive 33-1/3 percent of the difference between the verdict received in the previous trial of this cause ($52,000) and the net judgment including interest recovered by the landowner in the new trial. In addition, the landowner filed affidavits from three other attorneys experienced in condemnation litigation who stated that the 33-1/3 percent contingent fee contract that the landowner had with her attorneys was the standard fee arrangement in condemnation cases.

The District Court allowed the landowner the full $32,312.23 as her necessary expenses of litigation.

The state contends that affidavits justifying these expenditures are not sufficient to support their award, but that such an award must be based on other evidence. The landowner contends that because the record does not reveal whether oral testimony or exhibits other than these affidavits were presented, the award of her necessary expenses of litigation

must stand.

We have previously considered what kind of evidence must be introduced to support an award of attorney fees. First Security Bank v. Tholkes (1976), 169 Mont. 422, 547 P.2d 1328, 1332, 33 St. Rep. 341; Crncevich v. Georgetown Recreation Corp. (1975), 168 Mont. 113, 119-20, 541 P.2d 56, 59. The reasonableness of the attorney fee claimed must be shown by evidence. Rauser v. Toston Irrigation District, Supra. A contingent fee contract is not controlling in demonstrating the reasonableness of an attorney fee. Olson v. Carter (1977), ____Mont.____, ____P.2d____, 34 St.Rep. 1539, 1543; Engebretson v. Putnam (1977), ____Mont.____, 571 P.2d 368, 34 St.Rep. 1241, 1247. An award of attorney fees must be based on a hearing allowing for oral testimony, the introduction of exhibits, and an opportunity to cross-examine in which the reasonableness of the attorney fees claimed is demonstrated. Such an award may not be based solely on a contingent fee contract between attorney and client.

In eminent domain proceedings in which contingent fee contracts are entered into after July 1, 1977, we note that the 1977 legislature specifically provided reasonable and necessary attorney fees shall be determined on the basis of evidence demonstrating the customary hourly rate for an attorney's services in the county in which the trial is held and not on the basis of the contingent fee contract. 1977 Mont. Laws, Ch. 48, §1 (codified at section 93-9921.2, R.C.M. 1947).

The state argues that we should extend these requirements to the other items claimed as necessary expenses of litigation. A statutory procedure for such a hearing which allows for taking of oral testimony, introduction of exhibits, and cross-examination already exists. Section 93-8619, R.C.M. 1947.

Appellant's final issue concerns the District Court's award of 10 percent interest per annum on the condemnation award. The state initially filed this condemnation suit on April 29, 1968, and took possession of the property in question some time after that.

From that time until July 1, 1975, condemnation awards drew "lawful interest" (6 percent) from the date on which the property owner surrendered possession of the property. Section 93-9913, R.C.M. 1947 (amended 1975). In 1975 the legislature raised the interest rate payable to 10 percent. 1975 Mont. Laws, Ch. 534, §1. The jury in Marsh's new trial rendered a verdict after the effective date of this amendment.

The state contends that the proper rate of interest payable in this case is 6 percent for the whole period in question and cites in its support the Louisiana case of Long Leaf Lumber, Inc. v. Svolos (1972), La.App., 258 So.2d 121. It points out, however, that New York cases hold that the old interest rate applies up to the date of amendment and the new interest rate applies from that time onward. Board of Education v. Sapsin (1970), 35 A.D.2d 973, 317 N.Y.S.2d 918; In Re Incorporated Village of Hempstead (1970), 33 A.D.2d 1036, 308 N.Y.S.2d 798.

Marsh contends that the amendment of the statute should be applied retroactively in her case and that the proper interest rate payable is 10 percent from the date the state took possession of her property.

In our view it is more equitable to apply the 6 percent interest rate up to the effective date of the amendment and to apply the 10 percent interest rate from the effective date thereafter. We are supported by the early Montana case of Stanford v. Coram (1903), 28 Mont. 288, 293-94, 72 P. 655. In Stanford the interest rate payable on judgments received prior to 1899 was

10 percent. In 1899 the legislature decreased the interest rate payable to 8 percent. The Stanford court held the rate of interest payable was 10 percent up to the date of amendment and 8 percent thereafter. When interest is allowed by statute, it is given as damages for delay in payment of the principal obligation. Although the legislature can change this measure of damages, the rate of interest payable should be that rate current in the periods during which the delay in payment has occurred. Stanford v. Coram, supra; People v. Sexton (1940), 284 N.Y. 57, 29 N.E.2d 469, 471.

Marsh argues that although amendments to statutes usually apply only prospectively, the legislature in amending section 93-9913 intended the 10 percent interest rate to be retroactive. She points to the following statutory language as evidencing that intent:

> " * * * the full amount finally awarded shall draw interest at the rate of ten percent (10%) per annum from the date on which the property owner surrenders possession of the property * * *." Section 93-9913, R.C.M. 1947. (Emphasis supplied by Marsh.)

"No law contained in any of the codes or other statutes of Montana is retroactive unless expressly so declared." Section 12-201, R.C.M. 1947. Although a statute need not say "this statute shall be retroactive", the intent that it operate retroactively must be expressed and unmistakable. Davidson v. Love (1953), 127 Mont. 366, 370, 264 P.2d 705. That unmistakable intent does not exist here.

The 1975 amendment to section 93-9913 merely substituted "interest at the rate of ten percent per annum" for "lawful interest". 1975 Mont. Laws, Ch. 534, §1. The language which Marsh emphasizes, " * * * from the date on which the property owner surrenders possession of the property * * *", was already in the statute and was left unchanged. We do not think this

amendment demonstrates unmistakable intent that the 10 percent interest rate apply to periods before July 1, 1975.

This case must, therefore, be remanded to determine the proper amount of interest due applying the 6 percent interest rate from the date the state took possession of the property up to the effective date of the 1975 amendment and applying the 10 percent interest rate thereafter and for determination of reasonable attorney fees.

The cause is remanded to the District Court for further proceedings in accordance with this opinion.

_____
Frank I. Haswell
                                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices