MR. JUSTICE SHEEHY
dissenting.
This landowner was very much ill-used by the Yellowstone County jury. On its face, the award for the actual taking is unconscionable. She was awarded $4,815 for an actual taking of 80.3 acres. This averages approximately $60 per acre. If at anytime in 1971, the presumed year of taking, an 80 acre tract in the beautiful lands along the Yellowstone River east of Pompeii’s Pillar were to be sold for $60 per acre, a line of eager purchasers a mile long would have formed to get in on the buy.
This unfair result is because of error that occurred in the course of the trial. The first error was the refusal of the District Court to allow a landowner to testify as to her estimate of the value of the property following the taking. She would have testified that the *344 property she owned had been depreciated by virtue of the taking to the extent of $40,000. The District Court refused her testimony on the grounds that she needed “more specific foundation”. In this, the District Court erred. The only foundation necessary for her testimony had been laid: she was the landowner, and under State Hwy. Comm’n v. Marsh (1974), 165 Mont. 198, 203, 527 P.2d 573, the landowner’s right to give an opinion as to reasonable value of his or her property, when the use before and after is the same, it is unqualified:
“(1) The landowner on prima facie showing of ownership, may testify as to value, so long as:
“a. His testimony is ‘reasonable’, and
“b. The value testified to is for the uses to which he is putting the land . . .”
The basis of the court’s refusal to allow this landowner to testify as to her opinion on value was not based on lack of “reasonable” testimony but rather that she had not laid a specific foundation. This was an insufficient ground on which to deny her testimony.
The objections to her testimony on which the State relied are not sufficient to overcome her right as landowner to testify to the value of her property. The State’s objection consisted of the fact that she was leasing the land instead of operating it herself, that she is a schoolteacher and mother living in Red Lodge, Montana, a substantial distance away from her property; that her testimony indicated because of the taking that some of her land would have to be overgrazed in order to continue as a cow-calf ranch operation; that the depreciation in value would be predicated upon impliedly negligence maintenance of the highway relative to erosion off of the tube underpassing the highway; that it would “ignore the landowner’s duty to mitigate damage”; and that her estimate of value included cost-of-cure items. Those objections go merely to the weight of the testimony, and have no effect on her unqualified right under State Hwy. Comm’n v. Marsh, supra, as a landowner to testify as to the value of her property. The fact that she would testify as to the value after the taking has no bearing. The eminent *345 domain proceedings were commenced in 1971 when the complaint was filed. The highway itself was not constructed until 1974-1975. The cause was tried in May 1978, so she had at the time of trial at least three years of experience with her cow-calf operation and how the taking affected the value of her property.
In 1962, the defendant and her husband purchased a parcel of land from the State of Montana which was characterized as grazing land, and which was offered on competitive bids. She offered to testify as to the price they paid for that grazing land. On objection, the court refused to allow such testimony. Even though the purchase was nine years prior to the taking in this case, the value placed upon the grazing land in a purchase by this landowner would have a direct bearing on the value to be considered by the jury of the land taken. When the State expert testified as to values, he used what he termed as comparable sales occurring early in the 1960’s in the same area. Of course there was no objection on the part of the landowners counsel to this testimony. Obviously, refusal to allow this landowner to testify as to the value of land actually purchased by her in connection with this land as an indication of the value of this land in 1971 was again error.
This court attempted to straighten out the law with respect to the landowner’s testimony of value in State Hwy. Comm’n v. Marsh, supra. As a result of the majority opinion in this case, that problem is again beclouded with no guidance to courts or lawyers for future eminent domain proceedings.
In State Hwy. Comm’n v. Marsh, supra, this Court reversed because the landowner was not allowed to testify as to the value of the property involved. The same result should have been obtained here. Were that so, it would not be necessary to consider the issue of attorney fees at this juncture. But since the majority here is sustaining-what was done in the District Court with respect to the landowners testimony, the question of attorney fees becomes pertinent. In my opinion, the jury did enough damage to this landowner in awarding an insufficient amount for the taking. We do her further damage in not applying 1972 Mont.Const., Art. II, § 29. In my *346 dissent in State By and Through Dept. of Highways v. Burlingame (1979), 185 Mont. 223, 597 P.2d 51, 56.1 pointed out that the only statutory definition of a “final offer” was that contained in section 70-30-305, MCA, which provided that the “final offer” had to be made within 30 days after the appeal had been perfected from the commissioner’s award or report. In this case, the majority, relying on a subsequent offer, not a “final offer” as defined by the statute, made several months after the appeal had been perfected, denies attorney fees and deprives his landowner of just compensation. The result here is a gross inequity. In addition to having received an inadequate award, which is now approved, this landowner must in addition bear the burden of her attorney fees and costs. If this Court continues to refuse to apply properly a specific statute, where can a landowner turn?
I would reverse for a new trial.
MR. JUSTICE DALY, I agree with this dissent.