No. 89-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

E. NEVEN ZUGG AND SCOTT SYME,

        Plaintiffs and Appellants,

  -vs-

JOHN RAMAGE, M. RODNEY YOUNG, et al.,

        Defendants, Cross-Appellants and Respondents.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Keller, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Channing J. Hartelius; Hartelius, Ferguson & Baker,
Great Falls, Montana
William A. Douglas; Douglas & Sprinkle, Libby, Montana

    For Respondent/Cross-Appellant:

        Kenneth E O'Brien; Hash, O'Brien & Bartlett, Kalispell,
Montana
Paul C. Meismer; Garlington, Lohn & Robinson, Missoula,
Montana

Submitted on Briefs: June 30, 1989

Decided: September 21, 1989

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This suit arose out of a sale of commercial real estate in Lincoln County, Montana. In a trial in the District Court of the Nineteenth Judicial District, the jury returned a verdict against defendant John Ramage for $400,000 in compensatory damages and $300,000 in punitive damages. The court entered a directed verdict for defendant M. Rodney Young. Plaintiffs appeal from the directed verdict and denial of their motion for a new trial as to defendant Young. Ramage appeals from the judgment against him. We affirm the judgment as to defendant Ramage and reverse and remand as to defendant Young.

The issues raised by plaintiffs are:

1. Did the trial court err in denying the motion for a new trial and granting a directed verdict as to defendant Young?

2. Did the trial court err in granting defendant Young's motion in limine to exclude all evidence of his resume, financial statement, bankruptcy petition and character?

Defendant Ramage raises the following issues:

3. Did the trial court err in denying Ramage's motion for a directed verdict and for a judgment notwithstanding the verdict?

4. Did the trial court err in permitting plaintiff Zugg to testify as to the 1983 value of the property?

5. Did the trial court err in permitting Jacqueline Tisher to testify concerning the 1983 value of the resort improvements and lease?

6. Did the trial court err in instructing the jury on the claim of emotional distress?

7. Is the award of punitive damages so excessive as to give rise to a presumption that they were awarded as a result of passion or prejudice?

On May 4, 1984, Neven Zugg and Scott Syme entered into an agreement to purchase the Koocanusa Resort in Lincoln County, Montana, for $660,000. On December 6, 1985, they filed their complaint in this suit, alleging that in selling them the resort, the defendants had misrepresented its income and condition. Defendant John Ramage was the seller of the resort. Defendant M. Rodney Young was the realtor who made the sale.

At trial, plaintiffs presented evidence that they had been misled verbally by both Ramage and Young and in a brochure prepared by Ramage to believe that the resort had grossed $150,000 in income in 1983. In contrast, Ramage's 1983 income tax return reported gross income on the resort of only $94,762.03. The Forest Service leased land to the resort and required annual income reports on the resort. Ramage's 1983 report to the Forest Service showed gross income of only $59,847.51. The plaintiffs testified that they had originally asked to see the books of the resort for the previous year, but they signed an agreement waiving production of the books after Ramage told them that the books could not be found. Plaintiffs testified that Ramage guaranteed them that the resort would do $150,000 worth of business in 1984, but Zugg testified that it only did $96,000 worth of business that year, despite plaintiffs' best efforts.

Plaintiff Zugg also testified at trial that his purchase of the resort was only possible if he first sold a sports complex and motel he owned in Plentywood, Montana. He testified that he was induced to enter the contract to buy the resort by defendant Young's purchase of the sports complex and motel. Young later defaulted on that contract, and the sports complex and motel were returned to Zugg.

## I

Did the trial court err in denying the motion for a new trial and granting a directed verdict as to defendant Young?

Plaintiffs argue that entry of a directed verdict as to defendant Young was improper. They cite the standard that a directed verdict should only be granted when, viewing the evidence in the light most favorable to the nonmoving party, reasonable persons could not differ as to the conclusions to be drawn from the evidence. They assert that they presented evidence that Young negligently failed to conduct a proper investigation as to certain facts about the resort, negligently misrepresented material facts, and committed constructive fraud.

Zugg and Syme both testified that they relied upon Young's representations about the resort because he held himself out as an experienced and able investment analyst. It was undisputed that Young made no efforts to confirm Ramage's representations about the income of the resort. Yet plaintiffs testified that he repeatedly told them that the income figures in the brochure prepared by Ramage could be relied upon. Plaintiffs had a real estate broker testify that Young should have checked out Ramage's representations about the resort's income as part of his duty to prospective buyers. Zugg testified that Young provided them with a financial statement about himself as he prepared to purchase Zugg's Plentywood property, but that he did not disclose that he was borrowing money from Ramage to fund the purchase.

We conclude that the plaintiffs presented sufficient evidence of Young's negligence and constructive fraud that these issues should have been presented to the jury. We therefore remand this case to the District Court for retrial as to defendant Young.

3

## II

Did the trial court err in granting defendant Young's motion in limine to exclude all evidence of his resume, financial statement, bankruptcy petition and character?

Plaintiffs maintain that the charge of fraud brings Young's character directly in issue. They argue that they should have been able to inquire into Young's character by presenting evidence of his financial condition and contrasting that with his representations to them about his financial capabilities. They therefore assert that granting Young's motion in limine to exclude such evidence was error.

Questions of the admissibility of evidence are left largely to the discretion of the trial court, which will be overturned only in cases of manifest abuse of that discretion. Britton v. Farmer's Ins. Group (1986), 221 Mont. 67, 86, 721 P.2d 303, 315. We refuse to disturb the District Court's ruling on this issue. We do note that counsel may wish to try to introduce some or all of this evidence on retrial.

## III

Did the trial court err in denying Ramage's motion for a directed verdict and for a judgment notwithstanding the verdict?

Ramage argues that plaintiffs did not prove the following elements necessary to establish a claim of fraud: reliance, right to rely, and damages. Ramage asserts that plaintiffs' lack of reliance on his representations about the income of the resort was demonstrated by Zugg's request that his accountant be allowed to analyze the books. Ramage also notes that plaintiffs successfully bargained for Ramage's guarantee that if there was not at least a $150,000 gross income for 1984, he would grant a $14,000 refund of the purchase price. Ramage claims that the absence of a right to

4

rely was shown by the "red flag" of the missing books, which he says Young should have recognized. Also, he brings up the plaintiffs' failure to get financial information on the resort from the Forest Service. Finally, Ramage asserts that plaintiffs failed to submit evidence of the fair market value of the property, which was necessary to calculate damages.

Both Zugg and Syme testified at length about their reliance on Ramage's representations and assurances of the income of the resort property. They both testified that Ramage strongly discouraged them from asking questions directly of Forest Service persons and told them that any questions directed to the Forest Service should go through him. The question of plaintiffs' right to rely on the representations of a seller of real property about the property is, we believe, peculiarly in the province of a jury. Zugg testified as to the value of the property. This testimony is discussed below under issue IV. After reviewing the record, we conclude that there was sufficient evidence to support submitting the issue of fraud to the jury and to support the jury's verdict.

IV

Did the trial court err in permitting plaintiff Zugg to testify as to the 1983 value of the property?

Over Ramage's objection, Zugg was allowed to give his estimate of the value of the resort. Ramage maintains that although an owner may testify as to the market value of his property, Zugg's testimony was not reasonable and should not have been allowed.

This Court has recognized the right of a landowner to testify as to the value of his property. State Highway Commission v. Marsh (1974), 165 Mont. 198, 202-03, 527 P.2d 573, 575. The record indicates that Zugg based his valuation of the resort on cash flow

5

during the time he and Syme owned it. The District Court accepted this as reasonable. Ramage was allowed to present his own testimony of the value of the resort, so that the jurors were not left with Zugg's opinion alone. We find no cause to disturb the court's ruling in permitting Zugg to testify about the resort's value.

V

Did the trial court err in permitting Jacqueline Tisher to testify concerning the 1983 value of the resort improvements and lease?

Jacqueline Tisher, the Lincoln County appraiser, testified for plaintiffs, giving her valuation of the resort for the year 1983. Ramage argues that because her valuation was based upon 1978 and 1972 figures, it was inaccurate and should not have been allowed into evidence. Also, Ramage asserts that it was not established that Tisher was qualified to testify as an expert about the resort's value.

The determination of whether a witness is qualified as an expert is within the discretion of the trial court. State v. Berg (1985), 215 Mont. 431, 433, 697 P.2d 1365, 1366-67. Jacqueline Tisher testified that she had been the appraiser for the county since 1974. Her testimony indicated that she did numerous property appraisals in Lincoln County each year. Although she testified that she used a 1978 value and a 1972 market, Tisher's estimate of market value was then calculated to reflect what the property was worth in 1983. We hold that the District Court did not err in permitting Tisher to testify.

## VI

Did the trial court err in instructing the jury on the claim of emotional distress?

Ramage argues that there was insufficient evidence to support an award of damages for emotional distress. Specifically, he claims that there was no evidence that plaintiffs' emotional distress was severe and that there was no showing of a substantial invasion of a legally-protected interest, as required to support damages. See Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 686 P.2d 209.

Zugg testified that he had to go to the doctor for chest pains as a result of his experience with the resort. He also testified that he had worries because of no longer being financially stable and that he had suffered a lot of sleepless nights. Syme testified that he had been forced to borrow money from his grandfather and had not been able to pay it back, transforming a "real good" relationship into a shaky one. He also testified that he had become cranky a lot and had lost sleep over the situation. Although the amount of evidence of emotional distress is close to the line in this case, we conclude that this testimony was sufficient to support submission of the issue of emotional distress to the jury.

## VII

Is the award of punitive damages so excessive as to give rise to a presumption that they were awarded as a result of passion or prejudice?

Ramage claims that the $300,000 in punitive damages awarded by the jury is so excessive in relation to his negative net worth, of which the jury was aware, as to shock one's conscience. However, defendant's net worth is only one of the factors to be

considered in reviewing an award of punitive damages.  Section 27-1-221, MCA.  In light of all the evidence presented, including that on the extent to which plaintiffs were damaged and the manner in which they were defrauded, we do not find the award of punitive damages excessive.

Affirmed in part and reversed and remanded as to defendant Young.

Chief Justice

We concur:

Justices

8