No.   91-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

UNITED FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION,
an Idaho corporation,

Plaintiff, Respondent and Cross-Appellant,

-vs-

WHITE-STEVENS, LTD., and THOMAS STEVENS,

Defendants, Appellants, and Cross-Respondents.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Harold V. Dye and Kristine L. Foot; Milodragovich,
Dale & Dye, Missoula, Montana.

For Respondent:

Sam E. Haddon and Dean A. Stensland; Boone, Karlberg
& Haddon, Missoula, Montana

FILED

JUN 4 - 1992

Filed:/ Smith
CLERK OF SUPREME COUR.
STATE OF MONTANA

Submitted on Briefs:   March 12, 1992

Decided:   June 4, 1992

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

White-Stevens, Ltd., and Thomas Stevens appeal from a judgment of the Fourth Judicial District Court, Missoula County, in favor of United First Federal Savings and Loan Association. We reverse. We frame the following issues for appeal:

1.  Whether the District Court erred in admitting expert testimony; and

2.  Whether the District Court erred in awarding United First Federal contractual damages.

Thomas Stevens, a professional appraiser and member of the American Institute of Real Estate Appraisers, prepared two appraisal reports on two properties in Missoula, Montana. The appraisals were prepared at the request of the Curran family (herein Curran). The first report was submitted on November 3, 1983, for a building located at 800 Kensington. According to the report, the value of the property in 1983, was $1,600,000. The second report was submitted on February 8, 1984, for an unimproved 6 acre tract located at the corner of Russell and 34th Street. According to the report the value of the property was $960,000. At the time of the appraisals, Stevens was a partner in White-Stevens, Ltd.

The prospective lender, United First Federal (UFF) reviewed the reports, and relied on the accuracy of the reports in making its decision to grant loans to Curran, secured by the appraised properties. On April 17, 1984, UFF loaned Curran approximately $600,000, secured by a trust indenture on the 6 acre tract. On

2

August 31, 1984, UFF loaned Curran $975,000, secured by a trust indenture on the Kensington property. The loan amounts were 61-62% of the appraised market values and were well below the industry average loan to value ratio of 70-75%.

Curran defaulted on both loans before the end of 1984. UFF judicially foreclosed each obligation and security as a mortgage. On December 10, 1985 the District Court entered a foreclosure decree. A default judgment was entered against the Currans which included interest, costs, and attorney fees. At the sheriff's sale, UFF bid $850,000 for the Kensington property, and $200,000 for the 6 acre tract. As a result of the sheriff's sale, a deficiency judgment of February 5, 1986, in the amount of $848,067, was entered against the Currans. UFF has exhausted every alternative in attempting to collect the debt. Curran did not redeem either property. UFF later sold the Kensington property for $775,000. UFF has not been able to sell the 6 acre tract.

UFF brought an action against White-Stevens, Ltd. and Thomas Stevens for damages arising from negligent misrepresentations of the appraisals of real property. A bench trial commenced on December 21, 1990. The District Court entered judgment on April 17, 1991, awarding UFF $848,067. This appeal followed. The standards of review are set out below as we discuss each issue.

I

Whether the District Court erred in admitting expert testimony.

Questions of evidence are discretionary with the trial court. The scope of review of discretionary acts by the trial court is

3

whether or not the trial court's determination was a misuse or abuse of discretion. *Steer, Inc. v. Dept. of Revenue* (1990), 245 Mont. 470, 803 P.2d 601.

Stevens argues the District Court improperly allowed expert testimony at trial, in violation of the Montana Rules of Civil Procedure. During discovery, Stevens' counsel propounded interrogatories to UFF requesting UFF identify the names of persons they expected to call as experts at trial. UFF responded, stating they would be calling Steven Alan Hall as an expert. UFF did not supplement its original answer to interrogatories. It is clear that under Rule 26(b)(4)(A)(i), M.R.Civ.P., UFF was required to disclose the names of experts it intended to call at trial. Rule 26(b)(4)(A)(i), M.R.Civ.P., provides:

> A party may through interrogatories <u>require</u> any other party to identify each person whom the other party expects to call a an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (Emphasis added.)

Rule 702, M.R.Evid, which governs expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise.

The Commissioner's Comments to Rule 702, discuss two standards in determining when testimony is expert in nature. The standard involved under the facts here is concerned with whether or not the subject matter requires expert testimony. Former § 93-401-27(9), RCM (1947) (superceded), admitted expert opinion when a case

4

involved questions of "science, art, or trade, when he is skilled therein". This section has been interpreted to include matters not within the range of ordinary training or intelligence. The modern rule admits expert testimony to aid the trier of fact to understand facts and draw correct conclusions. The Commissioner's Comments note that the modern rule intends to encompass both statements of the rule.

Nicholas Kaufman, Ken Staninger, and James Benn (whose testimony in part presented opinion evidence of Barney Olson, an appraiser hired by UFF) were called to testify at trial on behalf of UFF. UFF argues that neither Kaufman nor Staninger nor Olson, were identified as experts because they were not expected to testify as experts nor did they testify as such. We treat each witness separately.

### Kaufman

Nicholas P. Kaufman, a land use consultant with the engineering firm of Sorenson and Co., was subpoenaed by UFF and testified on their behalf. UFF hired Sorenson and Co. to study the flood proofing problems on the 6 acre tract in an effort to market the property. During direct examination, counsel for UFF stated:

> I have the intention of inquiring of you and asking you about what was available to you or to anyone who would have looked at the public record as of that date that related to flood-proofing or flood control issues on this property.

Stevens' counsel objected on the grounds that Kaufman was an undisclosed expert. UFF counter-argued that Kaufman would be testifying to historical facts and would not be giving his opinion. The objection was overruled.

Counsel for UFF then asked Kaufman,

> Based on your review of the records. . . what did your
> analysis and investigation of the records show to you or
> tell you about this property.

Counsel for Stevens repeated his objection. UFF argued it was really a summary of facts in the public record. Stevens' counsel counter-argued that without an expert to interpret the record, best evidence of public records are certified copies, and that interpreting public records is expert testimony. The objection was overruled.

Kaufman went on to present an analysis of the appropriate city council minutes, flood insurance rate maps, flood plain maps, and several sections of the flood plain ordinance.

Next, counsel for UFF asked Kaufman:

> Did Sorenson and Co. . . . come up with the calculations
> and a determination of what would need to be done? (to
> flood proof the property)

An objection was made and sustained as to the expert testimony. Kaufman went on to testify about the work he did relative to floodproofing the property.

Counsel for UFF then asked:

> What did you determine about the necessity of a
> joint effort, multi-many owner effort to consider or deal
> with the flood-proofing issues on this property?

Stevens' counsel objected on the grounds that the question called for an expert opinion. The objection was sustained as to the technical matters, but not as to the floodproofing. Kaufman testified that the property needed to be raised to prevent flooding, but was not allowed to testify as to how to fill the property for floodproofing purposes. Kaufman was allowed over

6

objection to discuss five different options for floodproofing.

Kaufman is a land use consultant with a Bachelor's degree in economics, a Master's in planning, and two years of education in engineering. Kaufman has been working in the area of flood permitting since 1978. Kaufman's area of specialty is not within the range of ordinary training and intelligence. Further, his testimony as such served to aid the trier of fact in drawing its conclusions. Therefore, we conclude that the District Court abused its discretion in allowing Kaufman to testify in violation of Rule 26, M.R.Civ.P.

### Staninger

Ken Staninger, a real estate broker in Missoula with 19 years experience, was involved in the sale of the Kensington property and received a commission. He acted as a co-broker working for the sellers. Since 1989 he has been the exclusive listing broker on the 6 acre tract. He was not listed as an expert by UFF. During Staninger's testimony, a letter was admitted over objection, containing his opinions as to the value of the property. Staninger estimated what it would cost to sell the property with the water problems. Stevens' counsel renewed his objection. The objection was overruled and Staninger went on to explain the marketing problems with the property.

### Olson (Benn)

Mr. Benn, the attorney who handled the foreclosure proceeding, was allowed to essentially testify over objection as to the value of the property at the foreclosure sale. The value was provided in a letter from Barney Olson, an appraiser hired by UFF. Barney

7

Olson was not named as an expert by UFF.

Ken Staninger, and Barney Olson, (through Benn's testimony) both knowlegable and experienced in the area of real estate, testified as to the value of the 6 acre tract. Montana has often allowed lay opinion testimony regarding the value of land. However, these cases involve the testimony of the verified owner of the land as to its value. See State v. Marsh (1978), 175 Mont. 460, 464, 575 P.2d 38, 42; Zugg v. Rampage (1989), 239 Mont. 292, 297, 779 P.2d 913, 916. The case before us concerns commercial property with significant flooding problems. The exact dispute in issue is the value of the land in question. The market value of the 6 acre tract required testimony beyond the scope of ordinary training and intelligence, and required expert testimony to aid the trier of fact in determining facts in issue. Kaufman, Staninger and Olson should have been named as experts upon the interrogatory request by Stevens. The days of disclosure are here. We conclude that the District Court abused its discretion in allowing such testimony as it was in violation of Rule 26, M.R.Civ.P.

II

Whether the District Court erred in awarding United First Federal contractual interest.

In reviewing questions of law we will determine if the trial court's determination as to the law is correct. Our review will be plenary. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. See also Hudson v. City of Butte (1940), 111 Mont. 210, 107 P.2d 882.

As stated above, the District Court awarded $848,067 in

8

damages to UFF. Stevens contends that $241,333.02 was awarded erroneously because it represents contractual interest from the note between Curran and UFF. UFF argues that it is entitled to the $241,333.02, and in addition, $620,572 in lost earnings on the deficiency at a rate of 15% interest from February 5, 1986 (the date of deficiency).

The foreclosure judgment summarized the items of contractual damages which included a 15% interest rate per annum from October 1, 1984 to December 6, 1985. The interest totaled $241,333.02. Nothing in the record supports the notion that $241,333.02 was anything but the contractual interest in the Curran-UFF note at a contractual default rate of 15%.

The case before us rests on the legal theory of negligent misrepresntation. Both parties cite § 552B of the Restatement (Second) of Torts. It provides:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>     (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>     (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance on the misrepresentaion.
> (2) The damages recoverable for a negligent misrepresentaion do not include the benefit of the plaintiff's contract with the defendant.

Under the Restatement, UFF is entitled to out of pocket expenses which accrued as a result of Stevens' negligent misrepresentaion. UFF is entitled to the difference between what they loaned to Curran (due to Stevens' misrepresentation) and what they received. This does not include lost earnings, or opportunity

9

cost between the deficiency and the date of judgment.

We conclude that the District Court erred in including $241,333.02 in the damage award against Stevens. The interest on the deficiency as of December 10, 1985, the date of the foreclosure action, has accrued at a rate of $348.44 per day between February 5, 1986 (date of foreclosure) and December 21, 1990 (date of trial) in the amount of $620,572. The District Court awarded UFF damages in the amount of $848,067 based on what the court deemed actual pecuniary loss to UFF. The District Court declined to award UFF its claim for the $620,572 in interest as a basis for lost earnings. We affirm the District Court in its denial of awarding UFF $620,572 in lost earnings.

The issue of whether the District Court's findings of fact and conclusions of law were supported by substantial credible evidence will not be discussed due to the fact we are reversing the judgment and remanding for a new trial.

Reversed and remanded for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the opinion of the majority on issue two. I respectfully dissent from the majority's conclusion that the testimony of Nicholas Kaufman, Ken Staninger and James Benn which was admitted over "expert testimony" objection constituted expert testimony requiring disclosure under Rule 26, M.R.Civ.P. Given the content of the testimony at issue and the abuse of discretion standard of review, I would affirm the District Court on issue one.

Nicholas Kaufman's testimony is summarized by the majority. It contained two discrete parts: first, Kaufman testified as to flood plain regulations and other matters of public record regarding those regulations as they relate to the two property parcels at issue; he then testified generally on five alternatives for flood-proofing the parcels. Stevens' counsel objected that Kaufman's testimony was undisclosed expert testimony. The District Court overruled the objection to testimony on the flood plain regulations and related matters. The court specifically sustained objections to portions of Kaufman's testimony addressed to the engineering aspects of the various flood-proofing alternatives but allowed Kaufman to testify generally on the alternatives "until we get in any technical matters."

The majority states that Kaufman's area of specialty and, assumedly, his testimony are not within the range of ordinary training and intelligence, in direct derogation of the District Court's conclusion that it was not. It is my view that Kaufman's testimony was, indeed, a "close call." However, I cannot ascribe

11

an abuse of discretion to the District Court in light of the clear and understandable nature of the testimony and the fact that, as the trier of fact in this case, the District Court did not believe the testimony was so complex or specialized as to constitute expert testimony.

Furthermore, I do not understand the majority's reliance on the fact that the court, as trier of fact, used Kaufman's testimony in drawing its conclusions. The majority seems to suggest that the court's actual use of the testimony renders the testimony "expert." If that is to be the definition of expert testimony, then we have reached a point where mere relevant testimony equates to expert testimony.

As to Ken Staninger, the majority correctly notes that he is a real estate broker of some years' experience who was involved with both parcels of property at issue in this case. Stevens' counsel's "expert opinion" objection to Staninger's opinion testimony on the $775,000 selling price for the Buttrey parcel was sustained because the testimony amounted to expert appraisal-type testimony. Staninger did provide testimony on the 6 acre tract, for which he was the exclusive listing broker. A letter from Staninger to UFF, in which Staninger discussed market conditions and his personal experiences in attempting to sell the property at the $250,000 asking price, was admitted over objection by Stevens' counsel that it constituted expert opinion on the value of the property. The majority apparently concludes that this letter was expert opinion testimony and that, as such, the District Court

12

abused its discretion in admitting the letter because Staninger was not identified as an expert. I disagree.

It is my view that the Staninger letter is lay opinion testimony under Rule 701, M.R.Evid. There is nothing of a scientific, technical or particularly specialized nature in Staninger's letter which would constitute Rule 702 expert opinion. Nor does Staninger's nineteen years' experience in the real estate business necessitate a conclusion that everything he says or does invokes expert status requiring disclosure under Rule 26, M.R.Civ.P. The letter recounts Staninger's personal experience in trying to market the Russell property; it includes Staninger's observations on market conditions he experienced relative to the property and UFF's asking price. Nothing in the letter approaches the kind of expert valuation or appraisal testimony the majority seems to suggest is there. The majority's conclusion that the letter is expert testimony subject to Rule 26 disclosure is an extremely broad view which renders virtually all testimony by any person engaged in any trade or profession expert testimony. The majority states that "[t]he days of disclosure are here." As a result of the majority opinion, that is certainly true; the traditional distinction between lay and expert testimony is no more.

It is my view that the majority similarly mischaracterizes the testimony of James Benn. Benn did not testify as to the value of the property at the foreclosure sale; he testified as to his own involvement in the foreclosure of both parcels and in helping UFF

13

establish its bid price for each parcel.

Benn testified to the bid price for the Buttrey Suburban Building. His testimony included the information that Barney Olson was retained by UFF to provide a range of values for the property; neither Olson's letter nor any specific valuation information from that letter was testified to by Benn. No objection was made to the referenced portion of Benn's testimony on the bid price, and the manner of establishing it, for the Buttrey parcel. An objection was made and sustained on "expert testimony" grounds to a later portion of Benn's testimony about fair market value.

Benn then testified that the same process was utilized in establishing UFF's $200,000 bid price for the 6 acre tract. Stevens' counsel objected that the question called for hearsay based on Olson's valuation; the objection was overruled. It is this action by the District Court in overruling a hearsay objection that the majority holds is an abuse of discretion because the testimony was in violation of Rule 26, M.R.Evid. Again, I cannot agree.

Benn's testimony as to the bid price for the 6 acre tract, and how it was established, is not expert testimony. It is factual testimony of Benn's own participation in UFF's action to foreclose the 6 acre tract. There is nothing specialized or technical about it, it does not constitute opinion testimony of any kind, and it is not valuation testimony as suggested by the majority. Furthermore, the testimony was not inadmissible on the hearsay grounds upon which the objection was based since it contained no reference

14

whatsoever to the contents of Olson's letter. I cannot find an abuse of discretion by the District Court on these facts.

The majority's brief and generalized treatment of Benn's testimony, and its resulting lack of clarity in concluding that that testimony was expert testimony requiring disclosure under Rule 26, does not provide guidance to the bench and bar of Montana in distinguishing lay and expert opinion. Instead, as noted above, the message seems to be that the difference between the two no longer exists. I dissent.

_Karla M. Gray_
Justice

Chief Justice J. A. Turnage:

I concur in the foregoing concurring and dissenting opinion of Justice Gray.

_J. A. Turnage_
Chief Justice

15

June 5, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Sam E. Haddon and Dean A. Stensland
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT 59807-9199

Harold V. Dye
Milodragovich, Dale & Dye
P.O. Box 4947
Missoula, MT 59806-4947

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy