JUSTICE McDONOUGH
delivered the Opinion of the Court.
White-Stevens, Ltd., and Thomas Stevens appeal from a judgment of the Fourth Judicial District Court, Missoula County, in favor of United First Federal Savings and Loan Association. We reverse. We frame the following issues for appeal:
1. Whether the District Court erred in admitting expert testimony; and
2. Whether the District Court erred in awarding United First Federal contractual damages.
Thomas Stevens, a professional appraiser and member of the American Institute of Real Estate Appraisers, prepared two appraisal reports on two properties in Missoula, Montana. The appraisals were prepared at the request of the Curran family (herein Curran). The first report was submitted on November 3,1983, for a building located at 800 Kensington. According to the report, the value of the property in 1983, was $1,600,000. The second report was submitted on February 8,1984, for an unimproved 6 acre tract located at the corner of Russell and 34th Street. According to the report the value of the *244 property was $960,000. At the time of the appraisals, Stevens was a partner in White-Stevens, Ltd.
The prospective lender, United First Federal (UFF) reviewed the reports, and relied on the accuracy of the reports in making its decision to grant loans to Curran, secured by the appraised properties. On April 17,1984, UFF loaned Curran approximately $600,000, secured by a trust indenture on the 6 acre tract. On August 31, 1984, UFF loaned Curran $975,000, secured by a trust indenture on the Kensington property. The loan amounts were 61-62% of the appraised market values and were well below the industry average loan to value ratio of 70-75%.
Curran defaulted on both loans before the end of 1984. UFF judicially foreclosed each obligation and security as a mortgage. On December 10, 1985 the District Court entered a foreclosure decree. A default judgment was entered against the Currans which included interest, costs, and attorney fees. At the sheriff’s sale, UFF bid $850,000 for the Kensington property, and $200,000 for the 6 acre tract. As a result of the sheriff’s sale, a deficiency judgment of February 5,1986, in the amount of $848,067, was entered against the Currans. UFF has exhausted every alternative in attempting to collect the debt. Curran did not redeem either property. UFF later sold the Kensington property for $775,000. UFF has not been able to sell the 6 acre tract.
UFF brought an action against White-Stevens, Ltd. and Thomas Stevens for damages arising from negligent misrepresentations of the appraisals of real property. A bench trial commenced on December 21, 1990. The District Court entered judgment on April 17, 1991, awarding UFF $848,067. This appeal followed.
The standards of review are set out below as we discuss each issue.
I
Whether the District Court erred in admitting expert testimony.
Questions of evidence are discretionary with the trial court. The scope of review of discretionary acts by the trial court is whether or not the trial court’s determination was a misuse or abuse of discretion. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.
Stevens argues the District Court improperly allowed expert testimony at trial, in violation of the Montana Rules of Civil Procedure. During discovery, Stevens’ counsel propounded interrogatories to UFF requesting UFF identify the names of persons they expected to *245 call as experts at trial. UFF responded, stating they would be calling Steven Alan Hall as an expert. UFF did not supplement its original answer to interrogatories. It is clear that under Rule 26(b)(4)(A)(i), M.R.Civ.P., UFF was required to disclose the names of experts it intended to call at trial.
Rule 26(b)(4)(A)(i), M.R.Civ.R, provides:
A party may through interrogatories require any other party to identify each person whom the other party expects to call a an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (Emphasis added.)
Rule 702, M.R.Evid, which governs expert testimony provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise.
The Commissioner’s Comments to Rule 702, discuss two standards in determining when testimony is expert in nature. The standard involved under the facts here is concerned with whether or not the subject matter requires expert testimony. Former § 93-401-27(9), RCM (1947) (superseded), admitted expert opinion when a case involved questions of “science, art, or trade, when he is skilled therein”. This section has been interpreted to include matters not within the range of ordinary training or intelligence. The modern rule admits expert testimony to aid the trier of fact to understand facts and draw correct conclusions. The Commissioner’s Comments note that the modern rule intends to encompass both statements of the rule.
Nicholas Kaufman, Ken Staninger, and James Benn (whose testimony in part presented opinion evidence of Barney Olson, an appraiser hired by UFF) were called to testify at trial on behalf of UFF. UFF argues that neither Kaufman nor Staninger nor Olson, were identified as experts because they were not expected to testify as experts nor did they testify as such. We treat each witness separately.

Kaufman

Nicholas P. Kaufman, a land use consultant with the engineer *246 ing firm of Sorenson and Co., was subpoenaed by UFF and testified on their behalf. UFF hired Sorenson and Co. to study the flood proofing problems on the 6 acre tract in an effort to market the property. During direct examination, counsel for UFF stated:
I have the intention of inquiring of you and asking you about what was available to you or to anyone who would have looked at the public record as of that date that related to flood-proofing or flood control issues on this property.
Stevens’ counsel objected on the grounds that Kaufman was an ■undisclosed expert. UFF counter-argued that Kaufman would be testifying to historical facts and would not be giving his opinion. The objection was overruled.
Counsel for UFF then asked Kaufman,
Based on your review of the records ... what did your analysis and investigation of the records show to you or tell you about this property.
Counsel for Stevens repeated his objection. UFF argued it was really a summary of facts in the public record. Stevens’ counsel counter-argued that without an expert to interpret the record, best evidence of public records are certified copies, and that interpreting public records is expert testimony. The objection was overruled.
Kaufman went on to present an analysis of the appropriate city council minutes, flood insurance rate maps, flood plain maps, and several sections of the flood plain ordinance.
Next, counsel for UFF asked Kaufman:
Did Sorenson and Co. ... come up with the calculations and a determination of what would need to be done? (to flood proof the property)
An objection was made and sustained as to the expert testimony.Kaufman went on to testify about the work he did relative to floodproofing the property.
Counsel for UFF then asked:
What did you determine about the necessity of a joint effort, multi-many owner effort to consider or deal with the flood-proofing issues on this property?
Stevens’ counsel objected on the grounds that the question called for an expert opinion. The objection was sustained as to the technical matters, but not as to the floodproofing. Kaufman testified that the property needed to be raised to prevent flooding, but was not allowed *247 to testify as to how to fill the property for floodproofing purposes. Kaufman was allowed over objection to discuss five different options for floodproofing.
Kaufman is a land use consultant with a Bachelor’s degree in economics, a Master’s in planning, and two years of education in engineering. Kaufman has been working in the area of flood permitting since 1978. Kaufman’s area of specialty is not within the range of ordinary training and intelligence. Further, his testimony as such served to aid the trier of fact in drawing its conclusions. Therefore, we conclude that the District Court abused its discretion in allowing Kaufman to testify in violation of Rule 26, M.R.Civ.R

Staninger

Ken Staninger, a real estate broker in Missoula with 19 years experience, was involved in the sale of the Kensington property and received a commission. He acted as a co-broker working for the sellers. Since 1989 he has been the exclusive listing broker on the 6 acre tract. He was not listed as an expert by UFF. During Staninger’s testimony, a letter was admitted over objection, containing his opinions as to the value of the property. Staninger estimated what it would cost to sell the property with the water problems. Stevens’ counsel renewed his objection. The objection was overruled and Staninger went on to explain the marketing problems with the property.

Olson (Benn)

Mr. Benn, the attorney who handled the foreclosure proceeding, was allowed to essentially testify over objection as to the value of the property at the foreclosure sale. The value was provided in a letter from Barney Olson, an appraiser hired by UFF. Barney Olson was not named as an expert by UFF.
Ken Staninger, and Barney Olson, (through Benn’s testimony) both knowledgeable and experienced in the area of real estate, testified as to the value of the 6 acre tract. Montana has often allowed lay opinion testimony regarding the value of land. However, these cases involve the testimony of the verified owner of the land as to its value. See State v. Marsh (1978), 175 Mont. 460, 464, 575 P.2d 38, 42; Zugg v. Ramage (1989), 239 Mont. 292, 297, 779 P.2d 913, 916. The case before us concerns commercial property with significant flooding problems. The exact dispute in issue is the value of the land in question. The market value of the 6 acre tract required testimony *248 beyond the scope of ordinary training and intelligence, and required expert testimony to aid the trier of fact in determining facts in issue. Kaufman, Staninger and Olson should have been named as experts upon the interrogatory request by Stevens. The days of disclosure are here. We conclude that the District Court abused its discretion in allowing such testimony as it was in violation of Rule 26, M.R.Civ.P.
II
Whether the District Court erred in awarding United First Federal contractual interest.
In reviewing questions of law we will determine if the trial court’s determination as to the law is correct. Our review will be plenary. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. See also Hudon v. City of Butte (1940), 111 Mont. 210, 107 P.2d 882.
As stated above, the District Court awarded $848,067 in damages to UFF. Stevens contends that $241,333.02 was awarded erroneously because it represents contractual interest from the note between Curran and UFF. UFF argues that it is entitled to the $241,333.02, and in addition, $620,572 in lost earnings on the deficiency at a rate of 15% interest from February 5,1986 (the date of deficiency).
The foreclosure judgment summarized the items of contractual damages which included a 15% interest rate per annum from October 1, 1984 to December 6, 1985. The interest totaled $241,333.02. Nothing in the record supports the notion that $241,333.02 was anything but the contractual interest in the Curran-UFF note at a contractual default rate of 15%.
The case before us rests on the legal theory of negligent misrepresentation. Both parties cite § 552B of the Restatement (Second) of Torts. It provides:
(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
(b) pecuniary loss suffered otherwise as a consequence of the plaintiff’s reliance on the misrepresentation.
(2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff’s contract with the defendant.
Under the Restatement, UFF is entitled to out of pocket expenses *249 which accrued as a result of Stevens’ negligent misrepresentation. UFF is entitled to the difference between what they loaned to Curran (due to Stevens’ misrepresentation) and what they received. This does not include lost earnings, or opportunity cost between the deficiency and the date of judgment.
We conclude that the District Court erred in including $241,333.02 in the damage award against Stevens. The interest on the deficiency as of December 10, 1985, the date of the foreclosure action, has accrued at a rate of $348.44 per day between February 5, 1986 (date of foreclosure) and December 21,1990 (date of trial) in the amount of $620,572. The District Court awarded UFF damages in the amount of $848,067 based on what the court deemed actual pecuniary loss to UFF. The District Court declined to award UFF its claim for the $620,572 in interest as a basis for lost earnings. We affirm the District Court in its denial of awarding UFF $620,572 in lost earnings.
The issue of whether the District Court’s findings of fact and conclusions of law were supported by substantial credible evidence will not be discussed due to the fact we are reversing the judgment and remanding for a new trial.
Reversed and remanded for a new trial.
JUSTICES HARRISON, HUNT, TRIEWEILER and WEBER concur.