No. 95-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

W BAR N SHEEP & CATTLE CO., INC.,
a Montana Corporation,

Plaintiff and Appellant,

v.

MEATS OF MONTANA, INC., a Montana
Corporation, and NORWEST BANK OF BILLINGS,

Defendants and Respondents.

FILED

AUG 22 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Robert W. Holmstrom, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Arnie A. Hove, Attorney at Law, Circle, Montana


        For Respondents:

            Michael B. Anderson, V. Ann Liechty; Gannett,
            Anderson & Liechty, Billings, Montana


Submitted on Briefs:   August 3, 1995

Decided:   August 22, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellant, W Bar N Sheep & Cattle Company (W Bar N), filed suit against Meats of Montana, Inc. (MOM), and Norwest Bank, Billings, alleging actual fraud. The matter was tried before a jury which returned a special verdict finding that Norwest Bank, Billings was not guilty of fraud. W Bar N appeals from that verdict. We affirm.

Background

Wilmer Pawlowski and Nora Pawlowski are shareholders in the appellant corporation W Bar N. MOM was engaged in the business of purchasing, slaughtering, and selling processed meat of cattle. The Pawlowskis are also shareholders in MOM and have been since MOM originated. When MOM was first formed, it sought financing from Norwest Billings. Norwest Billings declined to offer financing to MOM but suggested that MOM contact Norwest Business Credit, Inc. (NWBC) a sister corporation in Minnesota. NWBC agreed to finance MOM and provide a line of credit upon certain conditions. Accordingly, MOM granted a security interest to NWBC on all property, receivables and intangibles in return for a credit agreement with NWBC.

In October 1990, as part of the financing arrangements, Norwest Billings and MOM entered into a collateral account agreement whereby MOM agreed to deposit all collections receivable and other cash proceeds of the collateral security in the "collateral account." MOM invoiced its meat sales with payments to

2

be sent directly to a "lockbox" from which Norwest Billings was to retrieve the funds and deposit them in the collateral account. As MOM paid its debt to NWBC in this fashion, the monies available in the line of credit were correspondingly increased.

On November 1, 1990, Herb Kelsey of Norwest Billings, contacted O. Lee Meyers, secretary of MOM, to inform him that the MOM cattle purchase account was overdrawn by $90,000 and that the checks would be returned if they were not covered. O. Lee Meyers then contacted Wilmer Pawlowski and advised him that $90,000 had to be wired to MOM's cattle purchase account by 2:00 p.m. or checks would not be honored by Norwest Billings and the MOM operation would be taken over. Mr. Meyers further stated to Wilmer Pawlowski that if Pawlowski wired the money to MOM's account, Pawlowski would be repaid from the proceeds of sale of processed meats. Wilmer Pawlowski spoke with Herb Kelsey and claimed that he demanded a writing from Kelsey granting assurances that he would be repaid. Pawlowski testified that Kelsey said he would send something in writing within ten days to two weeks. Kelsey testified that Pawlowski did not request a writing and no writing was issued by Norwest Billings by way of a promise by Norwest Billings to pay for any obligation of MOM. In any event, Wilmer Pawlowski, on behalf of W Bar N wired the $90,000 to MOM's cattle purchase account and Norwest Billings honored the checks in question. MOM did not reimburse the $90,000 to W Bar N and W Bar N then filed suit against MOM and against Norwest Billings on the basis of fraud. A default was taken against MOM and appellants proceeded to trial

3

against Norwest Billings.

Issues presented for review:

I   Did the District Court err in excluding the testimony of Jeanne Marie Charter on the grounds that the offered testimony was irrelevant?

II   Did the District Court err in giving court's Jury Instruction No. 13 as an accurate statement of law?

III   Did the District Court properly exclude testimony from Wilmer Pawlowski regarding lost profits on the grounds that it was improper lay testimony, improper expert testimony and speculative in nature?

I

Did the District Court err in excluding the testimony of Jeanne Marie Charter on the grounds that the offered testimony was irrelevant?

This Court's standard of review in addressing evidentiary rulings is one of "manifest abuse of discretion." In other words, questions of admissibility of evidence are left largely to the discretion of the trial court and will not be overturned except in cases of manifest abuse of that discretion. Zugg v. Ramage (1989), 239 Mont. 292, 296, 779 P.2d 913, 916. W Bar N offered the testimony of a Ms. Jeanne Charter, another shareholder of MOM. W Bar N claimed that Charter had been involved in a situation similar to that of W Bar N, in that, in the summer of 1990, the Charters personally advanced funds to the cattle purchase account on MOM's request. Norwest Billings objected to the Charter testimony on the grounds of relevancy and on the grounds the Charter transaction occurred subsequent to the Pawlowski/W Bar N transaction. The District Court upheld the objection noting that the "issue here is

4

whether or not the bank has made some assurance to [Wilmer Pawlowski]. The issue isn't whether something happened with this matter that was some 45-days or two months later." On appeal, W Bar N contends that the Charter testimony was relevant under Montana Rules of Evidence, Rule 406, because it demonstrated a routine practice of Norwest Billings. Rule 406, M.R.Evid., provides as follows:

> (a) Habit and routine practice defined. A habit is a person's regular response to a repeated specific situation. A routine practice is a regular course of conduct of a group of persons or an organization.

> (b) Admissibility. Evidence of habit or of routine practice, whether corroborated or not, and regardless of the presence of eyewitnesses, is relevant to prove that conduct on a particular occasion was in conformity with the habit or routine practice.

> (c) Method of proof. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

Rule 406, M.R.Evid., clearly does not work to the benefit of W Bar N with regard to the Charter testimony. Whatever routine W Bar N was attempting to establish would not have been "routine" by the time Wilmer Pawlowski wired funds to MOM's account if the only similar event (the Charter loan) occurred at a later date. Rule 406(c) requires evidence of specific instances of conduct sufficient in number to warrant a finding that the practice was routine. One other instance is not sufficient to meet this test. Furthermore, the Charter testimony, at best, would establish a routine by MOM which cannot be characterized as a routine practice by Norwest Billings. Accordingly, we hold that the District Court

5

did not abuse its discretion in excluding the testimony of Jeanne Charter.

## II

Did the District Court err in giving court's Jury Instruction No. 13 which sets forth the provisions of § 30-4-401(1), MCA, allowing a bank to create an overdraft?

It is within the trial court's discretion to decide how to instruct the jury, taking into account theories of the contending parties, and the reviewing Court will not overturn the district court except for abuse of discretion. Hall v. Big Sky Lumber and Supply, Inc. (1993), 261 Mont. 328, 332, 863 P.2d 389, 392.

Court's Jury Instruction No. 13 read as follows:

> A bank may charge against a customer's account only items which are properly payable. An item is properly payable if it is authorized by the customer and is in accordance with an agreement between the customer and the bank.

The above instruction was adapted from § 30-4-401(1), MCA, which provides:

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank. [Emphasis added.]

W Bar N objected to the deletion of the underlined statutory language from the jury instruction. W Bar N claims that the language "even though the charge creates an overdraft" is relevant because Herb Kelsey, on behalf of Norwest Billings, had the discretion to honor the checks in the amount of $90,000, thereby

6

creating an overdraft situation for MOM. We hold that the District Court did not abuse its discretion in giving Jury Instruction No. 13 without the overdraft language included.

In presenting its fraud claim against Norwest Billings, W Bar N was not prejudiced by the exclusion of the overdraft language. At best, the language in question would have given Mr. Kelsey the discretion to honor or dishonor the checks. W Bar N, however, would have no legal basis upon which to fault Kelsey or Norwest Billings for failure to exercise that discretion in the manner that W Bar N preferred.


III

Did the District Court properly exclude testimony from Wilmer Pawlowski regarding lost profits on the grounds that it was improper lay testimony, improper expert testimony and speculative in nature?

Since the jury arrived at a defense verdict finding no liability by Norwest Billings, it was not necessary to consider the issue of damages and the exclusion of damage evidence would, at the most, be harmless error. Meinecke v. Skaggs (1949), 123 Mont. 308, 312, 213 P.2d 237, 239. Accordingly, we need not address this issue.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document

7

with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

8