No. 96-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

KATHLEEN D. GAUF,

Petitioner and Appellant,

and

DOUGLAS H. GAUF,

Respondent and Respondent.

FILED

SEP 08 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:     District Court of the Fifth Judicial District,
                 In and for the County of Madison,
                 The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Anne H. Watson, Watson & Watson,
                Bozeman, Montana

        For Respondent:

                Douglas H. Gauf, Pro Se, Belgrade, Montana

                                        Submitted on Briefs: July 23, 1997

                                        Decided: September 8,

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Kathleen D. Gauf filed a petition for dissolution of her marriage to Douglas H. Gauf in the District Court for the Fifth Judicial District in Madison County. A court-appointed master made findings of fact, conclusions of law, and a proposed decree which granted Kathleen's petition and divided the parties' property. The District Court adopted the master's findings, conclusions, and decree, and entered judgment on that basis. Kathleen appeals. We affirm in part and vacate in part the judgment of the District Court, and remand this case to the District Court for proceedings consistent with this opinion.

The following issues are presented on appeal:

1.     Did the District Court err when it adopted the master's division and valuation of the ranch property?

2.     Did the District Court err when it adopted the master's valuation of the outfitting business?

3.     Did the District Court err when it adopted the master's calculation and division of the parties' debts and assets?

4.     Did the District Court err when it assessed the master's fee?

2

## FACTUAL BACKGROUND

The following facts are taken from the master's findings of fact:

Kathleen and Douglas Gauf were married on October 3, 1981. They have one child, who was born July 1, 1988.

Kathleen's parents, Thomas and Diana Wilson, owned 165 acres of land in Madison County, known generally as Wilson Ranch. The real property includes 152 acres of pasture, two one-acre homesteads, a one-acre parcel on which an old schoolhouse is located, and a separate ten-acre parcel. Kathleen and Douglas lived on the property until their separation in July 1994.

In June 1987, Thomas and Diana Wilson made a gift of an undivided one-half interest in the real property to Kathleen and Douglas as joint tenants; Diana Wilson is the owner of the remaining one-half interest. Kathleen and Douglas dispute whether the gift also included the livestock and equipment on the ranch. Thereafter, Kathleen and Douglas operated the ranch by paying all necessary expenses, hiring help, performing labor, and retaining all profits from the ranch. In 1994 and 1995, following the parties' separation, Kathleen and Diana Wilson sold the livestock and equipment and retained the proceeds from the sales.

In 1989, Kathleen and Douglas established an outfitting business known as Douglas Fir and Furs. The business was originally funded by a $30,095 loan, secured by a trust indenture against ten acres of the ranch. The assets of the business include a boat and trailer, miscellaneous outfitting equipment, and an outfitting license.

3

On December 7, 1994, Kathleen sought a dissolution of the marriage in the Fifth Judicial District Court in Madison County. After an initial hearing, the District Court found that the parties' contentions created an exceptional condition, and, pursuant to Rule 53, M.R.Civ.P., appointed a master to preside over trial of the matter. After four days of trial, the master filed a report with the District Court, including findings of fact, conclusions of law, and a decree of dissolution of marriage, as well as a memorandum in support of the findings. The master determined that the undivided one-half interest in the real property was marital property, and that Douglas was entitled to a one-fourth share of the value of the ranch. In addition, the master found that an undivided one-half interest in the livestock and equipment on the ranch was included in the gift and thus, marital property subject to division. The District Court did not require the master to file a transcript of the proceedings.

Pursuant to Rule 53(e)(2), M.R.Civ.P., Kathleen objected to portions of the master's report which pertained to the property division; neither party made any objection regarding custody, child support, or visitation. The District Court found that the report was not clearly erroneous, but rather that it reflected a fair and equitable resolution of this matter. Therefore, the District Court adopted the report and ordered the property to be divided pursuant to its terms. Kathleen now appeals from the District Court's decree.

## ISSUE 1

Did the District Court err when it adopted the master's division and valuation of the ranch property?

We review findings of fact related to the division of marital property to determine if they are clearly erroneous. If they are not, the judgment will be affirmed unless the district court abused its discretion. *See In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525; *In re Marriage of Rock* (1993), 257 Mont. 476, 479-80, 850 P.2d 296, 298. The test for abuse of discretion in dissolution proceedings is "'whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.'" *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834 (quoting *In re Marriage of Tonne* (1987), 226 Mont. 1, 3, 733 P.2d 1280, 1282).

The division of marital property in a dissolution action is governed by § 40-4-202, MCA. Pursuant to this statute, the district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. *See In re Marriage of Maedje* (1994), 263 Mont. 262, 265, 868 P.2d 580, 582.

Rule 53, M.R.Civ.P., authorizes the appointment of a master by the district court. Pursuant to Rule 53(e)(2), M.R.Civ.P., "[i]n an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Kathleen implies that the District Court erred by appointing the master. Her primary challenge, however, is to specific findings made by the master. Accordingly, we will review the challenged findings to determine whether they are clearly erroneous. *See Schmidt v. Colonial Terrace Assocs.* (1985), 215 Mont. 62, 66, 694 P.2d 1340, 1344.

First, Kathleen contends that the master erred in finding that the gift of real property to the couple is a marital asset and that it should be divided equally. Here, both parties acquired their interest in the ranch by deed during the marriage, and as joint tenants. The record is devoid of evidence to support Kathleen's claims that the gift of the ranch was made entirely to her and that Douglas is not entitled to an interest in the ranch. Accordingly, we affirm the master's finding that the ranch is marital property.

When it distributed the parties' interest in the ranch, the District Court was required, pursuant to § 40-4-202, MCA, to consider, among other things, the contribution of each spouse to the property. Here, the record clearly supports the master's finding that "[b]oth parties have contributed financially to and facilitated the preservation and maintenance of [the ranch]." Kathleen contends that the ranch has deteriorated due to Douglas's negligent management, and therefore, that he is not entitled to an equal share of its value. However, that fact alone, even if true, does not establish that the master "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason." Therefore, we conclude that the master's determination that an equitable division of the property is to award each party a one-quarter interest in the value of the ranch is not an abuse of discretion.

In addition, Kathleen contends that the master erred when she determined the size of the ranch. However, while there was a conflict in the evidence of the ranch's size, the master's finding in that regard was supported by substantial evidence and was not clearly erroneous. Therefore, we affirm that finding.

6

Kathleen also objects to the District Court's valuation of the ranch. However, "the [district] court remains free, in its discretion, to adopt any reasonable valuation of property which is supported by the record." *In re Marriage of Luisi* (1988), 232 Mont. 243, 247, 756 P.2d 456, 459. "Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof." *Meeks*, 276 Mont. at 242, 915 P.2d at 834-35. A court is free to adopt proposed values of a party or a layman, or to set its own values, but when faced with widely conflicting values, the court is required to give reasons for selecting one value over the others. *See In re Marriage of Hurley* (1986), 222 Mont. 287, 296, 721 P.2d 1279, 1285. Where the parties present conflicting testimony as to the value of property, the court must use its fact-finding power to determine which evidence is more credible. *See In re Marriage of Otto* (1990), 245 Mont. 271, 278, 800 P.2d 706, 710.

Here, the master found that the total value of the ranch was $421,180. Kathleen's appraisal placed its value at $357,000, while Douglas's appraisal of the ranch, not including the value of the buildings, was $396,000. Despite Kathleen's claim in her brief that the master chose not to consider her appraisal, the master adopted many of her values directly from Kathleen's appraisal.

The crucial values on which the master and Kathleen diverge pertain to the two one-acre homesteads on the ranch. Kathleen's appraisal recognized their replacement costs at $78,795 and $72,150, but then used substantially depreciated values of $22,376 and $0,

respectively, in arriving at the total value of the ranch. In *In re Marriage of Popp* (1983), 206 Mont. 415, 420, 671 P.2d 24, 26-27, we stated:

> It is also clear from a thorough review of the file on this matter that the court valued some assets at their depreciated value as listed on the parties' income tax returns instead of at their fair market value. Yet there is no finding stating that the depreciated value is equal to fair market value of certain items of equipment. Without such a finding we hold the District Court's decision was "clearly erroneous."

Here, the master relied on *Popp* to find that valuation of the homesteads at such depreciated values would not reflect their fair market value or a reasonable valuation pursuant to § 40-4-202, MCA. Based on our review of the evidence, we conclude that the District Court did not err when it did so.

Kathleen contends that the master's valuation violates Montana law because it ignores the values presented by the evidence. We stated in *In re Marriage of Taylor* (1993), 257 Mont. 122, 127, 848 P.2d 478, 481, that if there is a dispute over the value of property, the district court may assign any value that is within the range of values presented by the evidence. When there is a great disparity between or among values, the court must state its reasons for arriving at its valuation. Here, the master explained that the lack of credible evidence regarding the ranch's value as a whole necessitated independent valuation of the component parcels to arrive at the overall value of the ranch. In arriving at the value of the component parcels, the master assigned only values which were well supported in the record

and fully explained the basis of each part of her valuation. Accordingly, we conclude that the master's valuation of the ranch as a whole is not clearly erroneous

Second, Kathleen contends that the master erred by including the ranch livestock and equipment in the marital estate. The parties dispute whether the Wilsons' 1987 gift of the real property also included a gift of the personal property, or whether the gift was limited to the use and proceeds of the livestock and equipment.

The master heard substantial testimony regarding the couple's authority to use, control, manage, maintain, and enjoy the livestock and equipment. The master was in the best position to weigh that evidence against the testimony of Thomas and Diana Wilson, who stated that it was their intent to transfer only the use and proceeds of the livestock and equipment. Accordingly, we affirm the master's finding that the couple owned a one-half interest in the livestock and equipment, and that any proceeds from their sale are subject to an equal division between them. We also conclude that the master's valuation of the livestock was supported by substantial evidence and was not clearly erroneous. However, we conclude that the master erred when she valued the ranch equipment based on the proceeds of a 1994 auction which included items that were clearly the personal property of Thomas and Diana Wilson. We therefore vacate the District Court's valuation of the ranch equipment, and remand to the District Court for a valuation of the ranch equipment without the nonmarital property.

9

ISSUE 2

Did the District Court err when it adopted the master's valuation of the outfitting business?

Kathleen contends that the District Court erred by basing its valuation of Douglas's outfitting business on the testimony of a previously unidentified witness.

We review a district court's evidentiary rulings to determine whether there has been an abuse of discretion. *See United First Fed. Sav. & Loan v. White-Stevens, Ltd.* (1992), 253 Mont. 242, 244, 833 P.2d 170, 172.

Rule 26(b)(4)(A)(i), M.R.Civ.P., permits a party, through interrogatories, to identify the name of each person whom the other party expects to call as an expert witness at trial and the subject matter of that person's testimony. Furthermore, a party has a duty pursuant to Rule 26(e)(1), M.R.Civ.P., to supplement any prior response regarding expert witnesses. A trial court's refusal to exclude the testimony of a witness whose identity has not been disclosed, despite interrogatories requesting their identities, is a violation of Rule 26, M.R.Civ.P., and constitutes an abuse of discretion. *See United First Fed.*, 253 Mont. at 248, 833 P.2d at 173. *See also Sanders v. Mount Haggin Livestock Co.* (1972), 160 Mont. 73, 79, 500 P.2d 397, 401.

Here, Kathleen's first set of discovery requests asked for a list of all witnesses whom Douglas intended to call at trial, as well as the substance of their testimony. Douglas's answer did not identify Glen Gallentine as a witness, nor did he identify the witness at any

subsequent time. Kathleen pointed this out when she objected to Douglas's attempt to have Gallentine testify regarding the value of the outfitting business. Nonetheless, the master allowed the witness to testify, and ultimately relied almost exclusively on that testimony to determine a value of the business. We conclude that the master's admission of and reliance on Gallentine's testimony was an abuse of discretion. Accordingly, we vacate the master's finding regarding the valuation of the outfitting business, and remand to the District Court for findings consistent with this opinion.

## ISSUE 3

Did the District Court err when it adopted the master's calculation and division of the parties' debts and assets?

Kathleen principally challenges the master's findings regarding two of the parties' debts and assets: (1) pasture income and hay sales; and (2) operating expenses of the ranch after the parties separated.

First, the master determined that 1994 pasture income in the amount of $7,075 was a marital asset, as well as other pasture income and hay sales in the amount of $6,859. While the latter figure is supported by substantial evidence, the former figure was not. The only possible reference in the record for the District Court's finding that the ranch received pasture income in 1994 was the following question and answer:

> Q. And again, could you take a look and indicate what the total revenue
> developed from the pasture for the year 1994--or 1995 has been?

11

A.    [BY DOUGLAS GAUF]  $7,075.00.

However, the question makes the answer unclear regarding the year being referred to, and to find that it referred to 1994 is contrary to other evidence that the pasture had not been leased in 1994. We therefore conclude that the District Court's finding that the ranch received pasture income in 1994 is clearly erroneous.

Second, Kathleen contends that the master erred by dividing the assets from the ranch equally without considering the expenses incurred by her for operation of the ranch. However, the court's responsibility is to make an *equitable* division of all of the marital property. *See* § 40-4-202(1), MCA; *In re Marriage of Barker* (1994), 264 Mont. 110, 114, 870 P.2d 86, 88. Accordingly, the appropriate question in reviewing the master's findings is not whether Kathleen and Douglas share equally in the ranch income and expenses, but rather, whether they share equitably in the marital estate. We conclude that they do. Therefore, we conclude that the fact that the master did not specifically offset Douglas's share to account for Kathleen's expenses was not an abuse of discretion.

## ISSUE 4

Did the District Court err when it assessed the master's fee?

Rule 53(a), M.R.Civ.P., provides in relevant part:

The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct.

12

Here, the court ordered the parties each to pay half of the master's $3000 fee. Kathleen contends that the $3000 fee is excessive and unjustified without an accounting to justify the amount.

The Montana rule is essentially identical to the Federal rule regarding compensation of masters. Federal decisions have held that district courts have discretion to determine the amount and allocation of a master's compensation, subject to review in case of abuse. *See, e.g., Aird v. Ford Motor Co.* (D.C. Cir. 1996), 86 F.3d 216, 221; *Brock v. Ing* (10th Cir. 1987), 827 F.2d 1426, 1428; *Morgan v. Kerrigan* (1st Cir. 1976), 530 F.2d 401, 427. We will do the same.

A review of whether the district court abused its discretion in its determination of the master's fee requires consideration of a number of factors, including the time spent by the master, the master's background and distinction, the thoroughness of the services, the difficulty, amount, or importance of the matter involved, and the assistance provided by the master to the final disposition of the matter. *See American Safety Table Co. v. Schreiber* (2d Cir. 1969), 415 F.2d 373, 379-80. Here, the master conducted four days of hearings involving many witnesses, and made findings on multiple contentions between the parties, including child custody, support, and the property division. In addition to the numerous findings and calculations, the master also prepared a substantial memorandum in support of the findings. The hearings and findings in this case demanded considerable time and effort

13

to complete. Therefore, we conclude that the $3000 fee was not unreasonably high for the master's services in this case, and that the District Court did not abuse its discretion.

We affirm this case in part and remand it in part to the District Court for a hearing to determine the appropriate marital share and valuation of the ranch equipment, the value of the outfitting business, and an appropriate division of the marital estate considering those values and other deletions from the marital estate as decided by this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

14